THE HOME INSURANCE COMPANY

*v.*

CHARLES P. SWIGERT, Auditor.

*Filed at Ottawa November 20, 1882.*

1.  STATUTE—*may be made to depend upon a contingency.* While a law can not have a mere fragmentary or inchoate existence, yet it is well settled that the operation and even remedial character of a perfect and complete law may, by virtue of limitations in the law itself, based upon contingent extrinsic matters, be enlarged, diminished, or wholly defeated. Such laws, though adopted absolutely and perfect in all their parts, may, by their own limitations, be made applicable to a hypothetical condition of things which may or may not ever happen.

2.  So it is competent for the legislature to pass a law, the ultimate operation of which may, by its own terms, be made to depend upon some contingency, as, upon an affirmative vote by the electors of a given district, or upon any other indifferent contingency; and this is no abandonment by the legislature of its legislative functions. In such case the law is complete when it comes from the hands of the legislature.

3.  FOREIGN INSURANCE COMPANIES *doing business in this State—rate of taxation dependent on the action of the foreign State.* The several

sections of the general Insurance law of March 11, 1869, relating to foreign insurance companies doing business in this State, in effect declare that the rates of taxation and scale of fees to be paid by such companies shall in all cases be governed by the general provisions of the Insurance act relating to that subject, exclusive of section 29, except where the statute of the State to which any such foreign company belongs has or may hereafter impose upon our own insurance companies doing business therein a higher rate of taxation than is required by our law, in which case section 29 is made to govern, and the higher rate imposed by such foreign State upon our companies doing business there will be applied to its own companies doing business here. The fact that no case has arisen calling for the enforcement of the 29th section until some twelve years after its enactment, can in no way operate to render that section inoperative, or affect its validity as a binding law. Until some other State should impose upon companies organized under the laws of this State, and doing business there, the higher rate of tax contemplated in the 29th section, no case could arise for its enforcement,—yet in the meantime it was in full force and effect, and it was entirely competent for the legislature to provide that the application of that section should await the happening of the contingency named.

4. The enforcement of the provisions of the 29th section in any proper case is not to be regarded as the enforcing by our courts of the laws of the foreign State, any more than would the case of enforcing a contract by legal proceedings in one of our own courts which was made in a foreign State, whose law regulating such contract differs from our own general law on the subject. In either case it is but the enforcement of our own law.

5. Nor is that section in conflict with section 1, article 9, of the constitution of 1870, which authorizes the legislature to tax peddlers, auctioneers, insurance business, etc., in such manner as it may, from time to time, direct by "general law *uniform as to the class upon which it operates*," as it does not follow that all foreign insurance companies are, for the purpose of assessment or taxation, to be deemed of the same class, within the meaning of the constitutional provision. The constitution has left the power with the legislature to classify such companies for taxation, as is done by the act in question.

6. CONSTRUCTION OF STATUTES—*several sections construed together.* The several sections of a statute relating to the same subject must be construed together in determining the legislative intent.

7. CONSTITUTIONALITY *of a statute.* A court will not declare an act of the legislature unconstitutional, unless it is clear, beyond reasonable doubt, it has transcended its constitutional powers.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

The Home Insurance Company of New York, the appellant, brought an action in the Sangamon circuit court, against Charles P. Swigert, the appellee, to recover money paid by the company to appellee, as Auditor, under section 29 of the general Insurance act, commonly known as the "reciprocity provision."

Counsel have embodied in a written stipulation the material facts upon which the rights of the parties depend, from which it appears the plaintiff is an insurance company incorporated under the laws of New York; that during the years 1880 and 1881 it had established agencies and transacted the business of insurance within the State of Illinois, and had fully complied with section 22 of the law regulating the business of insurance, approved March 11, 1869; that during the year 1881 the plaintiff had appointed three hundred and one agents in the State of Illinois, and that the Auditor of Public Accounts had issued certificates of authority to each of such agents, as provided by said section; that the plaintiff, in the month of January, 1882, filed with the defendant, as Auditor of Public Accounts, its annual statement, as required by said Auditor, showing, among other things, the amount of premiums received by the plaintiff in said State during the year 1881, and that such report was satisfactory to said Auditor; that the statement required by said section was filed with the said Auditor, showing the amount of premiums received by said company through its agencies in this State, for the year 1880; that the amount of premiums so received in gross was the sum of $193,443.80; that the plaintiff, in January, 1882, made proper application to the defendant, as Auditor, for the renewal of the certificates for each and all of its said agents located in said State of Illinois; that such application was made after the filing of its annual statement in accordance with the provisions of said section 22, and that the Auditor refused to renew such certificates, for the sole reason that the plaintiff had failed

Statement of the case.

and refused to pay a tax of eight-tenths of one per cent upon the gross amount of the annual premiums paid to such plaintiff upon its business transacted in the State of Illinois for the year 1880; that the gross amount of such premiums was $193,443.80, and that the tax thereon of eight-tenths of one per cent was $1547.55; that on the 31st day of January, 1882, the defendant, as such Auditor, rendered the plaintiff an account, of which the following is a copy:

"STATE OF ILLINOIS, AUDITOR'S OFFICE,
SPRINGFIELD, *Jan. 31, 1882.*

"*Home Insurance Co., New York;*
*To Charles P. Swigert, Auditor P. A.*

1881.

| | | |
|---|---|---|
| Jan. 28. | To filing statement - - - - | $20.00 |
| | " advertising - - - - | 80.00 |
| | " 301 ag'ts certificates - - - | 602.00 |
| | " $\frac{8}{10}$ 1% tax on $193,443.80 prems. in Illinois, 1880 - - - | 1,547.55 |
| Mar. 17. | " 13 ag'ts certificates - - - | 26.00 |
| May 27. | " 15 ag'ts certificates - - | 30.00 |
| | | $2,305.55 |

Cr.

| | | | |
|---|---|---|---|
| Jan. 28. | By check - - - - | $612.00 | |
| Mar. 17. | " | 26.00 | |
| May 27. | " | 30.00 | |
| June | " | 10.00 | |
| Aug. | " | 20.00 | |
| Nov. | " | 22.00 | |
| " | " | 4.00 | |
| " | " | 4.00 | |
| | | | 728.00 |
| | | | $1,577.55 |

File mark on back of paper:

"Home Insurance Co., statement of accts. with Auditor, Jan'y 31, '82, $1577.55."

That on said 31st day of January the plaintiff paid to the said defendant said tax of $1547.55; that at the time of such payment the plaintiff denied the validity of such tax, and made such payment under protest, and further, that such payment was made under the following stipulation:

"It is hereby stipulated and agreed between C. P. Swigert, Auditor of the State of Illinois, and the Home Insurance Company, of the State of New York, that said company shall pay to the said Swigert, under protest, the sum of $1547.55, being the amount claimed by said Auditor as due from said company for taxes for the year 1880, being eight-tenths of one per cent upon the gross business or premiums received by said company upon its business transacted in said State of Illinois during the year 1880, under section 29 of the general Insurance law of said State, passed and approved by the legislature thereof March 11, 1869, said sum of money to be held by said Swigert to abide the result of an action to be brought by said company against him to recover back said sum, and to test the validity of the law,—it being understood and agreed between the parties hereto that said action shall be prosecuted without unreasonable delay to final judgment in the Supreme Court of said State of Illinois, and both parties shall abide said judgment.

(Signed)       CHAS. P. SWIGERT, *Auditor P. A.*
               HOME INSURANCE Co., N. Y.,
                   by Eugene Cary, *Sp'l Ag't.*
               HOWARD INSURANCE Co., N. Y.,
                   by Eugene Cary, *Sp'l Ag't.*
               GERMANIA AND HANOVER INS. Cos.,
                   by Geo. D. Gould, *Atty. in fact.*"

That the said defendant claims authority to assess and collect said tax of eight-tenths of one per cent under and by virtue of the laws of the State of Illinois and the laws of the State of New York, and more particularly by virtue of section 29, of chapter 73, of the Revised Statutes of the State

42—104 ILL.

of Illinois, entitled "reciprocity," and under the act of the General Assembly of the State of Illinois, approved June 4, 1879, entitled "An act for the better regulation of the business of insurance, and for the protection of the citizens of this State in their dealings with insurance companies," and such other laws of the State of Illinois as were then in force, and also under and by virtue of the laws of the State of New York, more particularly because of an act entitled "An act to provide for raising taxes for the use of the State upon certain corporations, joint stock companies and associations, passed June 1, 1880, three-fifths being present;" that during the years 1880 and 1881, insurance companies incorporated under the laws of the State of Illinois had agencies and transacted insurance business in the State of New York, and were required to comply with said law of New York above referred to.

Section 5 of the New York act of June 1, 1880, above referred to, is as follows:

"Sec. 5.    Hereafter it shall be the duty of the president, secretary, or other proper officer of every insurance company and every association organized or incorporated by or under any law of this State, and every person or partnership doing an insurance business in this State, (except life insurance companies, and purely mutual beneficial associations whose fund for the benefit of members, their families or heirs, is made up entirely of contributions of their members, and the accumulated interest thereon,) to make report in writing to the comptroller, annually, upon the 1st day of August, in each year after the 1st day of August, 1881, setting forth the entire amount of premiums received on business done in this State by such company or association, person or partnership, during the year ending with the preceding 30th day of June, whether the said premiums were in money or in the form of notes, credits, or any other substitute for money; and every such company, association, person or partnership shall pay into the State treasury, at the date aforesaid, a tax, as a tax

on its corporate franchise or business, at the rate of eight-tenths of one per centum upon the gross amount of said premiums. And every company or association organized under the laws of any other State or country, and every person or partnership doing an insurance business in this State, except as aforesaid, shall pay into the treasury, on the 1st day of August in each year, a tax at the rate of eight-tenths of one per centum on the gross premiums received by them on business transacted in this State during the year ending with the preceding 30th day of June, whether the said premiums were in money or in the form of notes, credits, or any other substitute for money; and every such company, association, person, partnership, or the agents or officers thereof, in this State, shall make report in writing to the comptroller, annually, upon the 1st day of August in each year, setting forth the entire amount of premiums received during the period aforesaid: *Provided,* the reports above required shall be made under oath or affirmation, and that it shall be the duty of the comptroller of the State to add ten per centum to the account of any company, association, person or partnership which shall neglect or refuse, for a period of thirty days, to make the said report or to pay into the State treasury the tax imposed by this section. And it shall be the duty of the president, secretary, or other proper officer of each and every insurance company, association, partnership, and of every person liable to be taxed under this section, to make a report in writing to the comptroller, on the 1st day of August, 1881, under oath or affirmation, of the entire amount of premiums received on business done in this State during the six months ending with the preceding 30th of June, and to pay a tax at the rate of eight-tenths of one per centum thereon. And it shall be the duty of the comptroller of the State to add ten per centum to the account of any company, association, person or partnership which shall neglect or refuse, for a period

of thirty days, to make the said report or to pay into the State treasury the tax imposed."

Section 29 of our own act, referred to in the above stipulation, is as follows: "Whenever the existing or future laws of any State of the United States, or any other kingdom or country, shall require of insurance companies incorporated by or organized under the laws of this State, and having agencies in such other State, kingdom or country, any deposit or securities in such State, kingdom or country, for the protection of policyholders or otherwise, of any payment for taxes, fines, penalties, certificates of authority, license fees, or otherwise, greater than the amount required for such purposes from similar companies of other States by the then existing laws of this State, then, and in every such case, all companies of such States establishing, or having heretofore established, an agency or agencies in the State, shall be and are hereby required to make the same deposit, for a like purpose, with the Auditor of this State, and to pay to the Auditor for taxes, fines, penalties, certificates of authority, license fees, and otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such State upon the companies of this State, and the agents thereof: *Provided,* that the payment required of such foreign companies shall in no case be less than required by this act."

The court found the issues for the defendant, and rendered a judgment against the plaintiff for costs, and thereupon the latter prosecuted an appeal to this court.

Messrs. WALKER & CARTER, for the appellant:

Section 29 of the general Insurance law of this State is invalid, it being in effect a delegation by our General Assembly of its powers and discretion to the legislature of the State of New York. For twelve years this section has been a dead letter. If it had validity, it had no vitality. If life has

been recently given to it, this vitality has not come from the only power that could make, modify or repeal the law, but on the contrary, the legislature of New York has breathed into its inert body the breath of life.

The authority to make laws can not be delegated or transferred to any other person or body by the law-making power. 2 Locke on Civil Government, 273.

The power to impose taxes must be exercised by the legislature itself, and can not be delegated.    Cooley on Taxation, 48; Dillon on Municipal Corp. secs. 60, 567, 618; Cooley on Const. Lim. 117, 205; *Scofield* v. *Lansing*, 17 Mich. 437; *East St. Louis* v. *Wehrung*, 96 Ill. 392; *Thorne* v. *Cramer*, 15 Barb. 112; *Bradley* v. *Baxter*, id. 122; *Bartow* v. *Himrod*, 8 N. Y. 483; *Rice* v. *Porter*, 4 Harr. 479; *People* v. *Collins*, 3 Mich. 343; *State* v. *Wier*, 33 Iowa, 134; *Mishmeier* v. *State*, 11 Ind. 482; *Commonwealth* v. *Locke*, 72 Pa. St. 491; *State* v. *Hudson County*, 37 N. J. 12; *Foss* v. *City of Chicago*, 56 Ill. 354; *Harward et al.* v. *St. Clair Drainage Co.* 51 id. 130.

A law, the force of which is to depend upon the happening of some future event, or upon some future change of circumstances, can not be sustained.    When made to take effect upon the happening of a future event, the legislature in effect declares the law inexpedient if it should not happen, and expedient if it should happen.

The Auditor is no judicial officer, and has no right to determine, as a matter of fact, whether the legislature of New York has passed any particular law.

The tax levied by the Auditor is not uniform as to class, and is therefore inhibited by section 1, article 9, of the constitution.    *Bureau County* v. *Chicago R. R. Co.* 44 Ill. 229; *Allhands* v. *People ex rel.* 82 id. 234; *Hughes* v. *City of Cairo*, 92 id. 339; Cooley on Taxation, 128.

The appellant having already been taxed by the local authorities under section 30 of the act, the tax collected by the Auditor under section 29 is double taxation, which is

prohibited.   Cooley on Taxation, 164, 165; *Amesbury Woolen Co.* v. *Amesbury,* 17 Mass. 461; *Savings Bank* v. *New London,* 20 Conn. 117; *Savings Bank* v. *Portsmouth,* 52 N. H. 17; *Oliver* v. *Washington Mills,* 11 Allen, 276.

If authority is given the Auditor, by section 29 of the general Insurance law of 1869, to levy and collect the tax in controversy, then so much of said section as authorizes such tax is repealed by section 30 of the same act.

Mr. JAMES McCARTNEY, Attorney General, for the appellee:

An illegal tax voluntarily paid can not be recovered back. *Lamborn* v. *Dickinson County Comrs.* 97 U. S. 181; *Galveston* v. *Graham,* 49 Texas, 279.

That a law may be made to depend upon some contingency, as to when or whether it shall ever take effect, as, a vote of the people, is sustained by the decided weight of authority. This is no delegation of legislative power, but a delegation of power to determine some fact upon which the operation of the law is made to depend.   *Locke's Appeal,* 72 Pa. St. 498; *Alcorn* v. *Hamer,* 38 Miss. 652; *People ex rel.* v. *Salomon,* 51 Ill. 37; *People* v. *Reynolds,* 5 Gilm. 1; *Erlinger* v. *Boneau,* 51 Ill. 94; *Guild* v. *Chicago,* 82 id. 472; *State* v. *Baker,* 26 Vt. 357; *Anderson* v. *Commonwealth,* 13 Bush, 485; *Aurora* v. *United States,* 7 Cranch, 382; Cooley on Const. Lim. 117.

The business of insurance is not in any way inter-State commerce, and no objection can be interposed of violating the constitution of the United States.   *Western Union Tel. Co.* v. *Mayor,* 28 Ohio St. 521; *Home Ins. Co.* v. *Augusta,* 50 Ga. 543; *Paul* v. *Virginia,* 8 Wall. 168.

The only limitation upon taxation is, that the tax shall be uniform as to the class on which it operates, and the legislature has the exclusive power to make such classes and establish such rates as it may see proper.   The terms prescribed by this statute are uniform upon all companies from New York doing business here.   *Wallack* v. *Mayor,* 3 Hun,

95; 5 Thomp. & Cook, 310; *People* v. *Mayor,* 4 Conn. 420; *Ewrigh* v. *People;* 79 Ill. 214; *Burch* v. *Mayor,* 42 Ga. 596.

But a license is not a tax, and is not subject to the rule of uniformity. *East St. Louis* v. *Wehrung,* 46 Ill. 392; *Ducat* v. *City of Chicago,* 48 id. 172; *Hughes* v. *City of Cairo,* 92 id. 339; *Walker* v. *City of Springfield,* 94 id. 364.

The State may establish any rates it pleases for the privilege of a foreign corporation to transact its business in this State. *Western Union Tel. Co.* v. *Lieb,* 76 Ill. 172; *Western Union Tel. Co.* v. *Mayor,* 28 Ohio St. 521; *Hughes* v. *City of Cairo,* 92 Ill. 339.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It will be perceived from the statement which precedes this opinion, as well as from the argument of counsel for the appellant, that the theory upon which the company seeks to recover back the money paid by it to the Auditor under protest, rests upon the legal assumption that it is not competent for the legislature to provide a general rate of taxation and of fees to be paid by foreign insurance companies for the privilege of doing an insurance business in this State, as is done by the 30th and other sections of the Insurance act, and by another provision of the same law prescribe higher rates and different scales of fees to be paid by such companies upon certain contingencies therein provided for, as is done by the 29th section of the act,—and this is really the main question in the case.

The 30th section of the act requires all agents of foreign insurance companies doing business in this State to return, for purposes of taxation, to the proper officer of the county, town or other municipality in which their respective agencies are established, in the month of May, annually, the amounts of the net receipts of such agencies for the preceding year, which are declared to be subject to the same rates of taxation, for all purposes, that other personal property is in said

municipalities, respectively,—such tax to be in full of all town and municipal license. The 27th section requires certain fees to be paid by all companies proposing to do an insurance business under the act. Of course the several sections relating to this subject must be construed together, and when so considered, they in effect declare that the rates of taxation and scale of fees to be paid by foreign companies doing business here shall, in all cases, be governed by the general provisions of the Insurance act relating to that subject, exclusive of the 29th section, except where the statute of the State to which any such foreign company belongs, has or may hereafter impose upon our own companies doing business therein a higher rate of taxation than is required by the general provisions of our own act, in which case the 29th section is made to govern,—or, in other words, upon such contingency the higher rate of taxation imposed by such foreign State upon our companies doing business there, will, by virtue of the 29th section of our act, be applied to its own companies doing business here.

It is clear that if this 29th section is operative and valid at all, and the Auditor may rightfully enforce it whenever a case is brought within its provisions, there can be no recovery in the present action. But it is earnestly insisted that such is not the case; that the section in question has for twelve years past been a dead letter upon the statutes of the State; that if it now has any vitality at all, it has been recently infused into it by the statute of New York, and that to admit this is in effect to hold the legislature of the State may abdicate its legislative functions, and surrender them to the legislature of a foreign State, which all concede can not be done. This, to our apprehension, is an extreme and unsound view of the matter, although it seems to be sustained by *Clark & Murrell* v. *The Port of Mobile*, 10 Ins. Law Journal, 357. But that case can not, on principle, as we understand it, be reconciled with numerous other well considered cases,

and, moreover, we do not regard the reasoning by which the conclusion is reached as sound, and for these reasons we respectfully decline to follow it. As opposed to the reasoning in that case, we cite *Alcorn* v. *Hamer*, 38 Miss. 652; *Locke's Appeal*, 72 Pa. St. 498; *The People* v. *Reynolds*, 5 Gilm. 1; *The People ex rel.* v. *Salomon*, 51 Ill. 37; *Guild* v. *Chicago*, 82 id. 472; *Erlinger* v. *Boneau*, 51 id. 94.

Whatever the rule may be in other States, it is well settled in this, as will appear from the cases just cited, that it is competent for the legislature to pass a law the ultimate operation of which may, by its own terms, be made to depend upon some contingency, as, upon an affirmative vote by the electors of a given district, or upon any other indifferent contingency the legislature in its wisdom may prescribe. Where the contingency upon which the ultimate operation of a law is made to depend, consists of a vote of the people, or the action of some foreign deliberative or legislative body, as is the case here, it is erroneous to suppose the legislature in such case abandons its own legislative functions, or delegates its powers to the people in the one case, or to such foreign deliberative or legislative body in the other. In either case the law is complete when it comes from the hands of the legislature, otherwise it would be inoperative and void, for we fully recognize the principle a law, properly so called, can not have a mere fragmentary or inchoate existence; and even if it could, neither the people by a vote, nor any other independent body, could complete the unfinished work of the legislature, and thus make it a law. But while this is so, nothing is better settled than that the operation and even remedial character of a perfect and complete law may, by virtue of limitations contained in the law itself, based upon contingent extrinsic matters, be enlarged, diminished, or wholly defeated. Such laws, though adopted absolutely and perfect in all their parts, yet by their own limitations they are applicable to a hypothetical condition of things only, and which may or may

not ever happen. That it is perfectly competent for the legislature to pass such laws is shown by long legislative experience, and a decided weight of judicial authority. Indeed, we have not the slightest doubt of the validity of laws of this character, and to hold otherwise would clearly lead to the most serious consequences. Who has ever doubted the validity of that portion of our statute which declares that deeds executed without the State may be acknowledged, before any one authorized to take such acknowledgments, by the laws of the State or country in which they are made? Or who has ever questioned the constitutionality of that provision of our statute which makes all wills and testaments made in a foreign State or country binding and valid here, if executed and proven agreeably to the laws and usages of such foreign State or country, although not in accordance with our general law on the subject? And yet, in either of these cases, there is just as much reason for claiming that our legislature has abdicated its legislative functions, and attempted to delegate its constitutional and legitimate powers to a foreign State or country, as there is that it has done, or attempted to do so, in the present case; and to apply the doctrine contended for to those provisions of our statute, would unsettle and destroy a vast number of titles which have never heretofore been questioned, and would thereby give rise to a train of evils the magnitude of which can hardly be conceived. We can not, therefore, either upon authority or upon grounds of public policy, give the doctrine our sanction.

It is not an objection to the validity of this provision of the statute that no attempt has ever before been made to enforce it, and that it has, as counsel put it, "lain dormant for the last twelve years." In this sense all penal laws are dormant until the facts or circumstances arise which constitute a breach of them. Until the legislature of New York, in 1880, passed the act in question, and commenced enforcing it against our own companies doing business there, no case

had arisen here to which the 29th section of our own act could apply,—nevertheless it was in full force and effect all that time. It is also a misapprehension to suppose that in giving effect to this section of our statute we are simply enforcing the statute of a foreign State. It is a fundamental principle that courts can only enforce the laws of the State or sovereignty from which they derive their powers and jurisdiction. Take the ordinary case of enforcing a contract by legal proceedings in one of our own courts which was made in a foreign State, whose law regulating such contract differs from our own general law on the subject. In such case the court here does not simply administer the foreign law, for, as already stated, it has no power to do that, but, as in all other cases, it administers the law of this State only,—that is, it administers the law of this State regulating all foreign contracts of the same character, made under like circumstances. In all cases of this kind the law which obtains here, and by which the rights of the parties are governed, is identical with the foreign law where the contract was made; but it is the law here, and not the foreign law, that is enforced by our own courts. So in the present case, while our own law regulating the terms upon which New York companies may do business here, is identical with the law of that State prescribing the terms upon which insurance companies may do business there, it is nevertheless the law of this State, and not the law of New York, which is enforced by our courts here.

It is further contended by appellant's counsel, that the 29th section of our Insurance act is in conflict with section 1, article 9, of the present constitution, which is as follows: "The General Assembly shall provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property, such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise.

But the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, inn keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, and persons or corporations owning or using franchises and privileges, in such manner as it shall, from time to time, direct by general law *uniform as to the class upon which it operates.*"

This position, to have any force at all, necessarily assumes as true two other propositions, namely, first, that the amount required to be paid by New York companies doing business here, is, under the 29th section of our Insurance act, a tax, within the meaning of the constitution; and second, that all foreign insurance companies doing business here, are, for the purpose of assessment or taxation, necessarily of the same class. In the view we take of the second proposition it will not be necessary to discuss the first.

While we concede that all insurance companies organized under the laws of other States are to be distinguished from those organized under our own laws, for some purposes, by a common characteristic, namely, that of being created and organized under the laws of a foreign State, still, in our judgment, it does not legally or logically follow that all such companies are, for the purpose of assessment or taxation, to be deemed of the same class, within the meaning of the section of the constitution above cited, for it is hardly necessary to remark there may well be one or more attributes or characteristic marks common to several classes, and yet each class, for some purposes, be quite distinct from the other. The framers of the constitution having failed to classify insurance companies for these purposes, the power to do so rests exclusively with the legislature, and, as we understand it, that power has been exercised by the adoption of appropriate legislation for that purpose, already referred to. The insurance companies of each foreign State doing business here,

whose laws require companies organized under the laws of
this State doing business there to pay a higher rate of taxa-
tion than is required to be paid by the general provision of
our own law on the subject, are, by the express provisions
of the 29th section of our Insurance act, constituted a dis-
tinct class for the purposes of assessment and taxation here.
As already stated, the power to classify such companies has
been left by the framers of the constitution with the legisla-
ture, and we can perceive no good reason, nor has any been
suggested, why a classification of these companies may not
well be based, as it has been, upon the legislative policy of
their respective States towards our own companies doing
business there.   On the contrary, we can see many good
reasons (which we will not now stop to enumerate) for clas-
sifying these companies upon such a basis, and we have no
doubt it was perfectly competent for the legislature to do so,
as it did, by the adoption of the 29th section.

Whatever grounds there may be for doubt on the question,
we can not believe them of so serious a character as to re-
quire us to hold the 29th section unconstitutional.   It is a
familiar doctrine that courts will not declare an act of the
legislature unconstitutional, unless it is clear, beyond reason-
able doubt, it has transcended its constitutional powers.   We
can not say that such is the case here, hence we must and
do hold the act a valid law.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE SCOTT: I do not concur in this opinion.

Mr. JUSTICE DICKEY: I concur in the view that the statute
is valid, but I doubt whether our statute was intended to
apply to a case where the imposition by the foreign statute
is in no sense a discrimination against corporations of this
State.