(No. 33329.—

THE CITY OF CHICAGO, Appellee, *vs.* CENTRAL NATIONAL BANK IN CHICAGO, Trustee, *et al.*—(FLORENCE M. SIMMONS, Appellant.)

*Opinion filed January 21, 1955—Rehearing denied March 22, 1955.*

MURPHY, PEARSON & O'CONNOR, of Chicago, (WALTER W. PEARSON, and LAWRENCE L. O'CONNOR, of counsel,) for appellant.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (ROBERT J. NOLAN, FRANCIS F. LORENZ, and JAMES E. STRUNCK, of counsel,) for appellee.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

In a condemnation proceeding instituted by the city of Chicago under the act relating to municipal parking facilities, herein referred to as the Parking Act, to acquire land owned by Florence M. Simmons, herein referred to as defendant, the circuit court of Cook County sustained the constitutionality of the Parking Act and entered judgment awarding defendant $51,500 as compensation, from which defendant has appealed directly to this court.

The cause presents for our determination essentially three issues: whether the proviso in section 52.1-1 of the Revised Cities and Villages Act constitutes an unconstitutional delegation of legislative power to an administrative agency; whether the condemnation petition contains proper and sufficient allegations in compliance with the terms of the Parking Act; and whether certain evaluation evidence was properly excluded.

The operative facts adduced from the record are uncontroverted. The city of Chicago filed a condemnation proceeding under the authority of section 52.1-1 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1953, chap. 24, par. 52.1-1,) alleging in substance that the statute authorizes the city to establish sites and maintain parking facilities for motor vehicles, and for that purpose to acquire property by condemnation under the power of eminent domain. Pursuant to that authority the city council passed an ordinance on September 18, 1952, and supplemental ordinances on October 31, 1952, and January 26, 1953, copies of which are attached to the petition as exhibits A, B, and C. The subsequent ordinances refer to the original ordinance and involve additional parking projects. The ordinances recite the necessity for acquiring the parking sites, the description of the proposed areas and projects, the approval of the plan commission, and provide for the issuance of bonds incidental to the projects. The ordinances will be considered in greater detail hereinafter.

The defendant Florence M. Simmons moved to dismiss the petition upon the ground that the proviso in section 52.1-1 of the Parking Act that a city which has established a plan commission "shall submit to and receive the approval of the plan commission before establishing or operating any parking facilities," constitutes a delegation of legislative functions without establishing any standards to guide the exercise of said function, and is therefore unconstitutional. The motion also sets forth that there is no allegation in the petition that the acquisition of defendant's property was necessary or incidental to the regulation and control of motor vehicles, and that the petition did not indicate the submission to and receipt of approval from the plan commission as to the establishment of parking facilities on defendant's property.

The motion to dismiss was overruled and the cause proceeded to a hearing. Inasmuch as the only controversy

with reference to that hearing pertains to the exclusion of the valuation opinion of Ronald J. Chinnock, one of defendant's witnesses, and the testimony of Florence M. Simmons with reference to gross receipts, we shall review only that portion of the evidence.

Ronald J. Chinnock, testifying on behalf of defendant, stated that he was a realtor for 25 years, a member of various real estate and appraisal associations, and that in arriving at his opinion of the value of the property he took into consideration the "number of persons seen in the place, the number passing by, and the amount of business on this property." He explained that he believed the present use to be the highest and best use, and he therefore asked for, and received, a statement of the operations from the income tax returns for the past seven years, which information he considered in his valuation; that he regarded defendant's operation as unusual, since other restaurant operators might not do quite so well; that in arriving at his opinion as to the value of the property he took into consideration the amount of business on the property, the economic and physical factors, his knowledge of the area and comparable sales, and that he attempted to put the elements together.

The court sustained the petitioner's objection to the valuation opinion of that witness on the ground that it was based upon improper and illegal elements, and refused to admit the offer of proof that his opinion of the fair cash market value of the property as of the date of filing the petition to condemn was $66,500.

The court overruled defendant's renewed motions to dismiss, the motions for judgment notwithstanding the verdict and for a new trial, and entered judgment on the verdict, awarding defendant compensation for the taking of the property in the amount of $51,500.

In determining the propriety of that judgment we shall consider first the constitutionality of the statute upon which petitioner's authority to condemn is predicated.

The statute provides: "Any municipality is hereby authorized to: (a) Acquire by purchase or otherwise, own, construct * * * and operate motor vehicle parking lot or lots, garage or garages, parking meters, and any other revenue producing facilities necessary or incidental to the regulation, control and parking of motor vehicles (hereinafter referred to as parking facilities), as the corporate authorities may from time to time find the necessity therefor exists, and for that purpose may acquire property of any and every kind or description, whether real, personal or mixed, by gift, purchase or otherwise; *provided that any municipality which now or hereafter provides for the creation of a plan commission under Article 53 of this Act shall submit to and receive the approval of the plan commission before establishing or operating any parking facilities as provided in this Article; * * *.*" (Italics supplied.)

The constitutionality of the Parking Act was sustained in *Poole* v. *City of Kankakee,* 406 Ill. 521, where the court held that the act embraces the taking of land for a public use and therefore constitutes proper exercise of the right of eminent domain. However, it is conceded by the parties herein that a decision sustaining the constitutionality of an act on one ground does not preclude inquiry into its constitutionality on other grounds, (*Grasse* v. *Dealer's Transport Co.* 412 Ill. 179; *People* v. *Bruner,* 343 Ill. 146;) and that the *City of Kankakee case* did not pass upon the proviso referring to the approval of the plan commission.

Defendant argues that the word "approval" in the proviso is not limited by any other provision of the act, thereby giving the commission complete discretion to approve or disapprove a plan submitted by the city council, without any standards or guides prescribed by the statute. Plaintiffs reply that the challenged provision is not a delegation of legislative authority. The proviso to section

52.1-1 does not stand in isolation but must be read and construed with sections 53-1 and 53-2. For all practical purposes, section 52.1-1 adopts sections 53-1 and 53-2 by reference, a common and permissible legislative technique. (See: *People ex rel. Gutknecht* v. *City of Chicago,* 3 Ill. 2d 539.) Section 53-1 grants municipalities the power to provide for the creation of a plan commission. Section 53-2 empowers every plan commission:

"(1) To prepare and recommend to the corporate authorities a comprehensive plan of public improvements looking to the present and future development of the municipality. After its adoption by the corporate authorities, this plan shall be known as the official plan of that municipality. Thereafter from time to time the plan commission may recommend changes in the official plan. This plan may include reasonable requirements with reference to streets, alleys, and public grounds in unsubdivided land situated within the corporate limits * * *.

"(2) In municipalities of more than 500,000 inhabitants * * * to prepare and recommend to the corporate authorities a plan or plans for the development and redevelopment of the municipality * * *. The plan or plans when adopted by the corporate authorities shall be designated as the official plan, or part thereof, of that municipality. Such plan or plans may be adopted in whole or in separate geographical or functional parts, each of which when adopted shall be the official plan, or part thereof, of that municipality. Thereafter, from time to time, the plan commission may recommend changes in the official plan or any part thereof. To provide for the health, safety, comfort and convenience of the inhabitants of the municipality and contiguous territory, such plan or plans may establish reasonable standards of design for subdivisions and for resubdivisions of unimproved land and of areas subject to redevelopment, including reasonable re-

quirements for public streets, alleys, ways for public service facilities, parks, playgrounds, school grounds, and other public grounds.

"(3) To prepare and recommend to the corporate authorities from time to time, plans for specific improvements in pursuance of the official plan.

"(4) To give aid to the municipal officials charged with the direction of projects for improvements embraced within the official plan, to further the making of these projects, and generally to promote the realization of the official plan.

"(5) To exercise such other powers, germane to the powers granted by this article, as may be conferred by the corporate authorities."

By an ordinance passed in 1939 the city of Chicago created a plan commission known as the Chicago Plan Commission. Implementing section 53-2, the ordinance grants the commission the powers, among others, to prepare and recommend to the city council a comprehensive plan for the development of existing property, the rehabilitation of depreciated areas and of public improvements looking to the present and future development of the municipality, "such plan after its adoption by the city council to be known as the official plan of the city;" to prepare and recommend to the council, from time to time, plans for specific improvements pursuant to the official plan, and to pass upon such improvement plans as may be proposed by officials of the city or private groups or individuals and make recommendations to the council with respect to the relationship of such proposals to the official plan, within sixty days, or less if so designated by the council; to give aid when requested to the officials of the city charged with the direction of projects for improvements embraced within the official plan; to cooperate with the Chicago Housing Authority and the city council in the location of housing projects and the elimination of substandard housing con-

ditions for the promotion of the official plan; to exercise such other powers germane to the powers granted as may be conferred by the city council. The powers granted by the ordinance are substantially the same powers conferred by the statute. Enumeration of the powers and duties of the Chicago Plan Commission is followed by the declaration that "It is the intention of this section that the functions of the plan commission shall be advisory, investigatory and recommendatory only, and that its function shall in no way derogate from the powers of the city council to pass upon and appropriate for all city projects and improvements."

The requirement of the proviso to section 52.1-1 of the Parking Act that a municipality which has created a plan commission shall submit to and receive the approval of the commission before establishing and operating any parking facilities must be construed in the light of the provisions of section 53-2. The power to approve a proposed plan is thus not unfettered; its power is, in large measure, to recommend, first, a comprehensive plan for public improvements, second, plans for specific improvements, and "to exercise such other powers, germane to the powers granted * * *, as may be conferred by the corporate authorities." The Parking Act does not reasonably admit of the construction that it is an additional grant of enlarged power to plan commissions. On the other hand, it reflects legislative intention to protect a comprehensive plan of public improvements against municipal action which might tend to destroy the value of a plan of public improvements. The required approval carries no legal consequences unless and until the city council takes action by passing an ordinance. We are of the opinion that the required approval of the plan commission does not constitute the exercise of legislative power. In an analogous situation we said: "The action of the board in designating a conservation area carries with it no legal consequences

until a conservation plan for the area becomes effective. And a plan approved by the board does not become effective until it is adopted by the city council. The critical action, which affects the rights of property owners, is thus legislative rather than administrative action. [Citation.] In this respect the status and functions of the board resemble those of a board of local improvements, a zoning commission or a planning commission." (*People* v. *City of Chicago,* 3 Ill. 2d 539.) Our conclusion is fortified by the provision of the ordinance which specifically limits the functions of the Chicago plan commission to giving advice and making investigations and recommendations without in any manner impairing the power of the city council to pass upon and appropriate for all municipal projects and improvements.

So construed, the words "submit" and "approve" employed in the proviso to section 52.1-1 of the Parking Act have a special meaning sufficiently well known to enable those within their reach to apply them. (*People ex rel. Gutknecht* v. *City of Chicago,* 414 Ill. 600. Adequate standards are prescribed by statute to guide the exercise of such discretion as has been conferred.

The requirement of the proviso to section 52.1-1 that a municipality must submit to and obtain the approval of the plan commission before establishing or creating parking facilities is not a delegation of legislative power to the plan commission. The General Assembly may lawfully enact a statute, the operation of which is dependent upon a contingent event. (*Zisook* v. *Maryland Drexel Redevelopment Corp.* 3 Ill. 2d 570; *Home Ins. Co.* v. *Swigert,* 104 Ill. 653, 665.) In *People ex rel. Chicago Dryer Co.* v. *City of Chicago,* 413 Ill. 315, cited by plaintiffs, this court held unconstitutional section 23-26 of the Revised Cities and Villages Act which authorized a city council to change the name of a street upon the written consent of the owners of at least sixty per cent of the property abut-

ting thereon and required a city council to change the name of a street upon a petition, designating the name desired, signed by the owners of at least sixty per cent of the property abutting thereon. The simple and entire legislative act of naming a street was left to the property owners, who could reject the proposed name submitted by the city council or could impose upon the council another name which it would be required to accept. No judgment, discretion or supervisory control was left to the corporate authorities with respect to the naming of streets,—a flagrant delegation of legislative power to private persons. Here, however, the legislature has exercised full discretion in enacting the law authorizing municipalities to establish and create parking facilities; only the execution is held in abeyance pending submission to and approval by the plan commission. As we pointed out in *People* v. *City of Chicago,* 413 Ill. 315, 321: "Overall, the fundamental distinction lies between a delegation of power to make the law, which involves a discretion of what the law shall be, and conferring an authority or discretion as to its execution to be exercised under and in pursuance of the law."

Section 52.1-1 of the Parking Act does not constitute an unconstitutional delegation of legislative power.

With reference to defendant's argument that the petition to condemn does not sufficiently aver compliance with the statutory requirements for condemning property, (*Department of Public Works and Buildings* v. *Lewis,* 344 Ill. 253, 255,) it is evident that the petition incorporated as exhibits copies of ordinances enacted by the city council in establishing the various parking projects, which must be considered in adjudging the sufficiency of the petition.

The ordinance of September 18, 1952, recited that there exists in the residential, outlying and central business districts of the city serious traffic congestions, and, to properly regulate and control traffic within the city, the public safety and welfare require that additional parking facilities be

established as provided under the authority of section 52.1-1 of the Revised Cities and Villages Act. The ordinance of October 31, 1952, refers to the September 18 ordinance, to which it is supplemental, and provides for the acquisition of four multiple-level off-street parking facilities located "In the block bounded by E. Delaware Place, North Ernst Court, E. Chestnut Street and N. Rush Street, designated as Parking Site No. 5." That area includes defendant's property. The ordinance also recites that the sites had been approved by the plan commission, and are more particularly described in the plans and specifications prepared by certain architects, and on file in the office of the city clerk. The ordinance of January 26, 1953, refers to the prior ordinances, states the public necessity for establishing parking facilities in the areas described in the ordinances of September 18 and October 31, and describes the various parcels for each site, including site No. 5.

Inasmuch as the ordinances attached to the petition refer to each other, they should be considered as a unit, and since they recite that the city has determined the necessity for acquiring parking facilities under the terms of section 52.1-1 of the Revised Cities and Villages Act, describe the property to be acquired by the city, particularly the larger site which included defendant's 27-foot frontage, referred to in the ordinances of October 31 and January 26, and recite compliance with the other conditions prescribed by the Parking Act, there is a sufficient averment of compliance with the statutory requirements. We cannot countenance the technical refinements demanded by defendant in insisting upon a recital that the city found that a public necessity existed with reference to defendant's 27-foot parcel. It is sufficient that the city found a necessity existed with reference to the larger site to be acquired, which included defendant's property, and that approval of that project was given by the plan commission.

Defendant contends as a further ground for reversal that the court erred in excluding the valuation opinion of the witness Chinnock. Although it has been held that any person who is acquainted with the property and has a knowledge of values is competent to give an opinion as to the fair cash market value of the property, (*People ex rel. McDonough* v. *Goldberg,* 354 Ill. 423,) we have also insisted that there be some preliminary showing as to the matters upon which the opinion is based, (*County of Cook* v. *Holland,* 3 Ill. 2d 36, 46,) and where the witness has considered improper elements his testimony will be deemed incompetent. *Forest Preserve Dist.* v. *Hahn,* 341 Ill. 599; *Department of Public Works and Buildings* v. *Lambert,* 411 Ill. 183.

In the *Hahn case,* where a real-estate broker testified on cross-examination that in fixing the value of the property he considered the amount of business the man had been doing, including the prices he was charging and the number of people who came in the place, the court held that the valuation opinion should have been rejected. The court stated at page 602: "where the property sought to be taken is not designed for or applied to a special use, the evidence should be confined to its market value; and all evidence of the volume of business that may be done in or upon the property or the profits that may arise therefrom should be excluded. [Citation.] The testimony of the two witnesses concerning the value of the property in question introduced incompetent elements * * * and the motion to strike that testimony should have been granted."

In the case at bar the witness Chinnock included the element of the amount of business on the premises, admitting that probably other restaurant operators might not do as well. Consequently his opinion of the fair cash market value predicated on such speculative and improper elements was properly excluded.

Defendant argues that the attempt to show gross sales by the owner and by the witness Chinnock was for the purpose of determining the rental value of the premises. However, where the premises are owner occupied that element is not material, and such evidence of gross receipts would be misleading to the jury. The authorities cited by defendant where evidence of gross sales was admitted for the purpose of determining rental value were cases involving leases, and the inquiry therein was not the probable but the actual rental of the property and its cash value to the owner. (*City of Chicago* v. *Lord,* 276 Ill. 544.) Hence those cases are distinguishable, and the court herein properly excluded evidence of gross receipts where the issue is the fair cash market value of the property occupied by the owner.

On the basis of the foregoing analysis, it is our opinion that the judgment of the circuit court should be affirmed.

*Judgment affirmed.*