THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.* QUINCY COACH HOUSE, INC., *et al.,* Defendants-Appellees.

(No. 12826;

Fourth District—July 3, 1975.

William J. Scott, Attorney General, of Springfield (Roy E. Frazier and Samuel J. Naylor, Assistant Attorneys General, of counsel), for the People.

Keefe, Snowden, Gorman & Brennan, of Quincy, for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

Petitioner, the Department of Transportation of the State, brought suit in the Circuit Court of Adams County to condemn 7-foot strips on the south and west sides of a parcel of real estate together with a diagonal strip across the corner of the premises where the other two strips met. The realty was a 90- by 100-foot plot at the northeast corner of Broadway and 24th Streets in Quincy. Defendant Quincy Coach House, Inc., owned the property and operated a restaurant on it. Judgment was entered and a jury verdict awarding defendant $7500 for the land taken and $68,000 as damages to the remainder. Petitioner appeals.

The restaurant business was operated in a one-story building which has 2080 square feet of first-floor area and 1120 square feet of basement area and sits on the premises. No part of the building was taken by the condemnation. Prior to the taking, parking spaces were available for 17

or 18 cars along the sides of the property from which the strips were taken. This loss of the area in the strips virtually eliminated the availability of parking space on the premises for customers. Defendant owned no adjacent land. All witnesses agreed that most of the damages to the land not taken arose from this loss of parking.

■■ The most serious questions raised, however, concern the rulings of the trial judge as to the admissibility of evidence relating to the opinions of expert appraisal witnesses, called by defendant, as to the value of the tract prior to the taking. The land was not used as a church, college, cemetery, railroad or other type of "special use." When property of that nature is condemned, a wide variety of evidence, otherwise considered to be too speculative, including computations of income from a business operated on the premises is permitted to be received to prove the value of the property (*City of Chicago v. Farwell*, 286 Ill. 415, 121 N.E. 795). On the other hand, no witness for either side knew of the sale of a single property sufficiently similar to the one in question that either the appraisal witnesses or the jury might directly consider the sales price as a basis for determining the value of the tract in question prior to the taking. Determining value by any method under these circumstances is inherently rather speculative.

E. M. Talcott, Donald P. W. Voth and George Mating testified at the trial as experts on behalf of the defendant. Louis Kienzler and Robert P. Hayes did so on behalf of the petitioner. Prior to trial, Kienzler had also testified on behalf of petitioner at a hearing to determine preliminary just compensation. He, at that hearing, and the other expert witnesses at trial, testified that the three recognized methods of appraising real estate are the market, cost-of-reproduction and income approaches and that they considered all of these approaches in forming their opinions of value. Kienzler was not questioned on the subject at the trial. All presented evidence of being experienced appraisers with knowledge of property values in Quincy.

Talcott testified that restaurants are often leased with a rent based on a percentage of the annual sales from the operation. He said that it was standard appraising practice when using the income approach to value restaurant property by capitalizing at the going investment rate the expected rental return on such a lease after deducting expenses such as real estate taxes, depreciation and repairs. He explained that in order to determine depreciation it is necessary to ascertain a separate value for the land, since land is not depreciable. He obtains that figure by the market approach, an estimate based on the general trend of real estate prices in the community and comparable sales, if any.

The income from the land so valued is then computed at the capital-

izing rate. This figure is then deducted from the projected rental income minus real estate taxes and all expenses except depreciation. The amount thus obtained is then capitalized at a percentage being the sum of the percentage at which the land was capitalized plus the expected annual percentage of depreciation on the improvements taken on a straight-line basis. The resultant figure obtained is the estimated value of the improvements which when added to the value of the land determined by the market approach gives the estimated value of the parcel computed by the income approach.

Talcott then ran through a computation before the jury. He used a figure of 6% for the estimated percentage of sales which would be obtained in rent although he said that owners of chain restaurants were receiving 7½ to 8½%. He capitalized the income at 8½% and computed the depreciation at 4%. On this basis he computed the value of the parcel at $119,516.

Talcott did not use that figure, however, because he computed a figure on the cost-of-reproduction method which was less and which he testified that he thought represented the actual market value. He also illustrated that method before the jury by stating some of the figures that he used in his computation. In this method, he likewise first valued the land separate from the improvements by the market approach. He then estimated the cost of replacing the improvements and added the figures together. By that method he arrived at a value of $117,000.

Voth and Mating also both testified to using both the cost and income approaches calculating by the same methods as Talcott. Voth's opinion of value was $116,000, which was substantially the same as his computation using the income approach. He did not present his computations to the jury. He made a computation on the cost basis which was stated in detail to the jury and which rendered a figure of $117,750. Mating stated that by the cost approach he calculated a value of $100,667 and by using the income approach he calculated $98,156. He gave an opinion of value of $100,000. He did not recite the details of his calculations to the jury.

In *City of Chicago v. Giedraitis*, 14 Ill.2d 45, 150 N.E.2d 577, real estate being condemned was improved with a building, the front of which was used by the owner as a tavern and the rest of which she used as a residence. On appeal, the striking of the testimony of an expert appraisal witness for the land owner was approved because that witness had considered his estimate of the rent obtainable from the property in forming his opinion as to market value. The opinion cited *Chicago Land Clearance Com. v. Darrow*, 12 Ill.2d 365, 146 N.E.2d 1, and *City of Chicago v. Central National Bank*, 5 Ill.2d 164, 125 N.E.2d 94, for the

rule that when premises are owner-occupied future projections of rentals are too conjectural to be a proper element to consider in fixing value.

■■ Based on the foregoing authority, petitioner contends that because the property in question here was also owner-occupied, the trial court committed reversible error in overruling its objections to the testimony of defendant's witnesses as to prospective rental income from the property and as to opinion of value which considered that income. Where, as here, there are no comparable sales to consider, it is difficult to see how it is any more conjectural to estimate the rent that would be agreed on between a willing landlord and a willing tenant, negotiating without compulsion, than it is to estimate the sale price that would result from similar bargaining between buyer and seller. In any event, in this case, the witness Kienzler at the hearing to determine preliminary just compensation gave an opinion of value of the whole tract that was based in part on rental income obtainable from the owner-occupied premises. In *City of Lincoln v. Chicago and Alton R.R. Co.*, 262 Ill. 98, 104 N.E. 282, the defendant appealing from an assessment for a local improvement was ruled to be precluded from complaining of the trial court's allowance, over its objection, of testimony in regard to benefits that violated the ultimate-issue rule. The defendant had previously introduced evidence that violated that same rule. Here, petitioner, having introduced evidence based on projected rentals from the owner-occupied property, is precluded from complaining when defendant did likewise (see Cleary, Handbook of Illinois Evidence 100 (2d ed. 1963).

■■ The difficulty of appraising the market value based on estimated future rental income from presently owner-occupied real estate was compounded in this case because defendant's witnesses estimated the rental income upon the supposition of a lease that provided for a percentage of the gross sales from the premises to be paid as rent. The Illinois Court has clearly ruled that, except when a property is devoted to a special use, income from a business operated on the premises may not be considered as a basis for the value of the property (*Jacksonville and Southeastern Ry. Co. v. Walsh*, 106 Ill. 253; *Forest Preserve District v. Hahn*, 341 Ill. 599, 173 N.E. 763; and *City of Chicago v. Central National Bank*, 5 Ill.2d 164, 125 N.E.2d 94). The reason for this ruling is that such income or profit reflects the skill, goodwill and other characteristics of the operator as well as the attributes of the land.

■■ In the case under consideration the admitted evidence of sales bore much of the same weaknesses as evidence of income or profits, and to permit it to stand allows that to come in by the back door which could not come in by the front door. Here, however, there was evidence that it was a customary practice to lease restaurant properties for a rental that

was determined by a fixed percentage of profits. The evidence was also that the professional appraisers, persons upon whose calculations important business decisions in buying, selling and lending are made, value restaurant property by capitalizing estimated net return on such percentage leases. The foregoing being shown to be the practice and the petitioner having waived any impropriety in the introduction of an opinion of value based on projected rental income on this owner-occupied property by its own presentation of such evidence at the hearing to determine preliminary just compensation, the admission of the opinions of value by defendant's witnesses based on the income approach was not error. The jury heard the testimony of the witness Talcott that another operator might have less sales and could thus consider this in determining the weight to be given to the testimony.

The use of the cost-of-reproduction approach by defense witnesses also caused problems. The propriety of the general use of this method is not disputed. In doing so it is necessary to estimate a value of the land separately from the improvements because land cannot be reconstructed and the land value is not a cost of reconstruction. Here, however, the defense witness Talcott testified to an opinion of value the amount of which was the exact sum of his computations of land value and costs of reproduction. The most recent Illinois Supreme Court case concerning this method of appraisal is *Department of Public Works and Buildings v. Lotta*, 27 Ill.2d 455, 189 N.E.2d 238, where it was ruled not to be error for the trial court to strike the testimony of an appraisal witness who obtained his figure of value by a similar computation. The court stated:

> "The fair market value of the land before the taking was a controlling factor in the determination. We have consistently held that the fair market value of improved property is not the sum of the value of the building and the value of the land computed separately. For this purpose, the whole does not necessarily equal the sum of the parts. The value of unimproved land, adaptable for any use, may diminish, as land, when improved by the construction of a building and so committed to a particular use. For similar reasons, the construction of a building may not produce an increment in value equal to its cost, since the improvement may not be desirably situated. To avoid misleading and confusing the jury, the evidence may properly be confined to the value directly at issue, that is, the value of the improved land as a whole." (27 Ill.2d 455, 456-57, 189 N.E.2d 238, 240).

In reviewing various reported decisions the court further stated:

> "Applying the same principle, we have sustained the exclusion of

evidence of the value or reproduction cost of the building 'separate and apart from the value of the land itself.' (*Department of Public Works and Buildings v. Pellini*, 7 Ill.2d 367, 373; *City of Chicago v. Callender*, 396 Ill. 371, 381.) Where such evidence has been received over objection, we have reversed, whether an expert opinion has been based on the value of the buildings separate from the land, (*Department of Public Works and Buildings v. Divit*, 25 Ill.2d 93, 99-100), or evidence of the value of the building was received 'without any showing being made that the market value of the property as a whole was enhanced to the extent of such figure or in any other amount.' *Forest Preserve District v. Chilvers*, 344 Ill. 573, 578." 27 Ill.2d 455, 457-58, 189 N.E.2d 238, 240-41.

In the case under consideration, E. M. Talcott stated that the improvements on the premises were "compatible" with the land. Although this is not a direct statement that the market value of the property was enhanced to the full extent of the improvements, it gives the indication that this was substantially so. Compatibility refutes the existence of any gross disparity between the cost of the improvements and the enhancement in value occasioned thereby. The difference, if any, can well be brought out on cross-examination.

In *Lotta*, the following was stated about an attempt by the land owner to rehabilitate the stricken testimony of his opinion witness:

"After cross-examination disclosed that his opinion was reached by adding the value of the land and the value of the building and after the trial had adjourned for a day, an offer of proof was made to the effect that he had independently arrived at the same figure by considering the value of the improved land as a whole. The trial judge was in a better position to evaluate these circumstances, and we are not in a position to say that it was error to reject the offer of proof." 27 Ill.2d 455, 458, 189 N.E.2d 238, 241.

Although the meaning of the passage is not entirely clear, we understand it to mean that the receipt or rejection of the evidence, tardily presented and at a time when the witness could see how he needed to shape his testimony to overcome the objection, was a matter of discretion with the judge. We do not think that the court ruled that evidence that improvements enhance the value of real estate to the full extent of their costs would be inadmissible. We, therefore, do not think that *Lotta* or any of its predecessors require the striking of testimony of value of property when that value is calculated to be the sum of the value of the land plus the cost of the improvements when the witness believes the improvements to be compatible with the land. The use of the cost ap-

proach to determining value used by defendant's witnesses did not give rise to error.

■■ Petitioner also complains that it was improper to admit into evidence the amounts at which Talcott appraised the value of the building apart from the land and the results of the different methods of appraisal. The theory of this argument is that even when the witness can consider costs of reproduction or income from a property, the recitation of these calculations is likely to confuse the jury. In *Metropolitan Sanitary District v. Industrial Land Development Corp.*, 121 Ill.App.2d 393, 257 N.E.2d 532, an appraisal witness had testified that he used the income approach. The trial court's refusal to allow cross-examination as to how he computed his estimate was approved on appeal. The cases cited in that case and in petitioner's brief are the cases we have previously discussed where the use of the income approach was improper or where the cost-of-reproduction calculation was made without opinion as to the economic compatibility between the land and the improvements. We believe that in cases where the calculation is properly made, the better rule is to allow the basis of the calculation to be presented to the jury. "An expert's opinion can best be tested by examining the facts upon which it stands." *City of Chicago v. Equitable Life Assurance Society*, 8 Ill.2d 341, 345, 134 N.E.2d 296, 298.

■■ In his testimony on behalf of petitioner at the trial, Louis Kienzler stated on cross-examination that he based his value of the remainder of the property after the taking on the theory that the building which would remain intact could continue to be used as a restaurant because the parking space, almost all of which was lost by the taking, could be replaced by the purchase of land across the street belonging to the State. Upon the motion of the defendant, Kienzler's testimony as to the value of the remainder after the taking was then stricken. The land owner has a duty to mitigate his loss (*Kelly v. Chicago Park District*, 409 Ill. 91, 98 N.E.2d 738). The cost of doing so and curing the damages caused by the taking is admissible (*Department of Transportation v. Galley*, 12 Ill. App.3d 1072, 299 N.E.2d 810). Here, however, the theory that the damages could be mitigated involved conjecture as to the ability to purchase the lot across the street. The witness thought that it could be purchased for 125% of its estimated value and made his appraisal accordingly. The parties concede that the property would be available only if the State decided to sell it and that it would then have to be sold at auction. Under these circumstances, the trial court was not in error in striking the testimony as being too speculative.

■■ No error was committed in the other rulings of the trial court cited

by petitioner. Before expressing any opinion of value, each of defendant's witnesses told of their background in appraising, familiarity with Quincy property values and their observations of the tract in question. The foundation was sufficient. These witnesses did not state that they valued the land taken as "a part of the whole" and they did not give an opinion of the value of the remainder before the taking prior to giving their opinion of the value of the remainder after the taking. In *City of Chicago v. Cruse*, 337 Ill. 537, 169 N.E. 322, the defendants owned and used as one parcel adjacent lots 23, 24 and the east half of lot 25. In a proceeding to condemn lot 24 and the east half of lot 25, it was held to be error to refuse to instruct the jury to consider the land taken as part of the whole tract and not as separate lots.

■■ In most cases appropriate compensation for the taking of private property for public use can be determined merely by determining the value of the tract before the taking and subtracting therefrom the value of the remainder after the taking. Where there is an enhancement to the remainder, occasioned by the improvement for which the condemnation was instituted, that enhancement must be offset against the damages to the remainder (*Department of Public Works & Buildings v. Barton*, 371 Ill. 11, 19 N.E.2d 935), but cannot be used to offset compensation for the land taken (see Esling and Johnson, *Measuring Just Compensation for Partial Taking in Illinois Eminent Domain Proceedings*, 1966 U. Ill. L.F. 87). Under those circumstances it is necessary to have separate determinations of the value of the land taken and the damages to the remainder. Here there was neither prejudice to the petitioner nor reversible error in the failure to state the separate elements of compensation in the usual way because the whole tract was considered as one entity by the appraisers and there was undisputedly no enhancement to the remainder.

The amounts of the verdicts found by the jury were within the range of the evidence. No substantial error having occurred, the judgment is affirmed.

Affirmed.

SIMKINS, P. J., and CRAVEN, J., concur.