(No. 34504.—

CHICAGO LAND CLEARANCE COMMISSION, Appellee, *vs.* WOLCOTT H. DARROW *et al.*—(COSMOPOLITAN NATIONAL BANK OF CHICAGO *et al.*, Appellants.)

*Opinion filed November 20, 1957.*

366

BLOCK AND SOLOMON, of Chicago, (IRVING L. BLOCK, of counsel,) for appellants.

ELSA C. BECK, and WILLIAM F. MORRISSEY, both of Chicago, (MILTON P. WEBSTER, JR., and EARL L. NEAL, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Petitioner brought suit in the superior court of Cook County to condemn 23 parcels of land for slum clearance. A jury fixed the sum of $65,000 as compensation for the taking of the property described as parcel 9-14, upon which verdict the court entered judgment from which this appeal is prosecuted. The appeal is properly directed to this court under the statutory provision for eminent domain proceedings.

The subject property is known as the Ford Hotel and is located at 2953-61 South State Street in the city of Chicago. It is improved with 2 two-story connected buildings approximately 65 years of age which cover virtually the entire lot. The buildings contain 36 hotel rooms and almost

200 six-by-eight-foot cubicles with chicken wire over the top, each containing a bed. There are four or five common washrooms. Only men patronize the hotel and for seventy-five cents they obtain one of the cubicles, a sheet, a pillow-case and a blanket for the night.

The defendants are the Cosmopolitan National Bank of Chicago, trustee and legal title holder of the property, Irving N. Chroman, Albert Chroman, and Philip Chroman, beneficiaries under the trust. Two of the Chroman brothers managed the hotel with the help of three women and seven male employees.

The petitioner's witnesses, Joseph M. West and George Becker, appraised the premises at $55,000 and $57,000, respectively. Defendants' four witnesses, Philip Chroman, Marvin Winthrop, John Golden, and Harold Passman, appraised the premises at $150,000, $135,000, $140,000 to $150,000, and $150,000, respectively. The jury after hearing all the evidence and viewing the property returned the $65,000 verdict.

Defendants allege that they were deprived of their constitutional guarantee against taking property without due process of law, that the trial court erred in excluding evidence of proper elements to be considered by the jury in arriving at the fair cash market value of the premises, that the verdict of the jury is against the manifest weight of the evidence, and that the court erred in instructing the jury.

It is first argued that there has been a taking of property without due process of law. Defendants assert that the denial of due process resulted from the denial of their motions for a continuance and a series of erroneous rulings by the court. It appears to be elementary that there is no question of due process involved here. The essential elements of due process of law are notice and an opportunity to be heard in an orderly proceeding adapted to the nature of the case. If errors are committed they may be corrected in the manner provided by law for correction of such

errors. (*Benton* v. *Marr*, 364 Ill. 628.) In short, due process of law is not a guarantee against error. In this case the trial judge had within his discretion the power to rule as he did on the motion for continuance (no statutory right to continuance being involved) and on other matters during the trial. Even though the rulings complained of may have been erroneous, they did not deprive the defendants of due process of law.

The question, then, is whether the trial judge committed reversible error by his rulings. First, we shall consider the denial of the motion for continuance. The defendants contend they were entitled to a continuance because: local prejudice had been inflamed against "flophouse" owners by news stories and broadcasts concerning a then recent heinous crime; appraisers contacted by defendants' counsel were in disagreement as to how to appraise a "flophouse" and that, therefore, counsel needed more time to prepare for trial; and, finally, one of the defendants was a nonresident who needed more time to decide on an attorney and to negotiate with said attorney with respect to fees.

Section 59 of the Civil Practice Act (Ill. Rev. Stat. 1955, chap. 110, par. 59) and Supreme Court Rules 8(5) and 14 confer broad discretion upon the trial court in the allowance or denial of continuances. This is not to say, however, that an arbitrary or capricious exercise of discretion would not be grounds for a reversal. (See *Adcock* v. *Adcock*, 339 Ill. App. 543.) A close scrutiny of the record in this case convinces us that the trial judge did not exercise his discretion capriciously or arbitrarily.

The propriety of granting a continuance on the ground of hostile feelings in the community is necessarily lodged in the discretion of the trial judge, who, from closer contact with the people, is better able to judge the intensity and universality of the prejudice complained of. Though the petitioner did not deny by affidavit the charge of community prejudice, there is no showing that the defendants were

denied *voir dire* examination or an opportunity to challenge any juror.

Despite the fact that defendants allege the appraisers contacted by their counsel could not agree on a method of appraising the subject property, the valuation testimony of the four witnesses produced by them varied but little. In the exercise of its discretion the trial court could easily have concluded this ground was not urged in good faith.

The nonresident defendant, Irving Chroman, is the owner of a one-third beneficial interest in the land trust which held title to the property in question. We have held that the beneficiary of a land trust is not a necessary party in a suit to condemn property. (*Chicago North Shore and Milwaukee Railroad Co.* v. *Chicago Title and Trust Co.* 328 Ill. 610.) Petitioner, by naming Irving Chroman as a party defendant, did not make him a necessary party, and it was entirely within the discretion of the trial judge to proceed to trial without granting additional time to an unnecessary party.

Defendants make much of the fact that the trial court withheld the issuance of a writ of assistance for almost three months after the trial, which showed that no great emergency existed, and they complain that parcel 9-14 was tried while the trial of the remaining 23 parcels was continued. The trial court could not try all the parcels at once and some parcel had to be first. There may have been no emergency with respect to this particular parcel but there is no valid reason given for not starting with it first. We must keep in mind the necessity for orderly and prompt disposition of the ever-increasing number of condemnation proceedings. *Chicago Land Clearance Com.* v. *Rosenau,* 10 Ill.2d 501.

We shall next consider the rulings made by the trial judge during the course of the trial. The defendants assert that the court erred in excluding evidence of the actual net income and of the depreciated reproductive cost of the

improvements of the premises as factors to be considered by the jury in arriving at the fair, cash market value of the premises under condemnation. That the measure of just compensation is the fair, cash market value at the time of filing the petition in eminent domain proceedings is not open to question. Evidence of net income derived from operating a business on the condemned property is not admissible and is not a basis for fixing compensation whenever the property has a market value. (*Jacksonville and Southeastern Railway Co.* v. *Walsh,* 106 Ill. 253; *City of Chicago* v. *Farwell,* 286 Ill. 415; *Department of Public Works and Buildings* v. *Lambert,* 411 Ill. 183; see *City of Chicago* v. *Central National Bank in Chicago,* 5 Ill.2d 164.) There are a few types of improved property of which the market value cannot be ascertained because it is applied to a special use, such as a church, college, cemetery, club house, terminal of a railroad, and the like. (*City of Chicago* v. *Farwell,* 286 Ill. 415.) As to these types of property, which are in effect exceptions, the law permits a resort to any evidence available to prove value including the net income from a business conducted on the property. The defendants in this case do not contend their property has been put to such a special use. They contend, rather, that the net income is derived from the property itself and not from a business conducted thereon.

This argument is novel and most interesting. However, the determination of fair, cash market value is a practical matter which cannot be clouded by the technicalities suggested by the defendants. In every case where real estate is a necessary part of the business, income from the business can be said in some measure to derive from the property itself. Surely there is nothing magical about this property which enables it to produce income without the invested capital and managerial skill of the Chroman brothers, not to mention the economic vicissitudes attendant with any endeavor for profit. Whether it is described as a business

operated on the property or a business of operating the property, the profits derived therefrom are too uncertain and depend on too many contingencies to safely be accepted as any evidence of the fair, cash market value of the property. Thus, the trial court properly excluded defendants' offer to prove the gross income, expenses and net income from the operation of the Ford Hotel.

Defendants argue that the trial court concluded that defendants were operating a business on the premises without any evidence offered to establish that fact. This early conclusion may have been unwarranted, but the argument is without merit since later evidence did establish that defendants were operating a business. We have held that though errors may have intervened in a condemnation case a new trial will not be granted where it appears that there would be no better result for the appellant upon another trial. *West Chicago Park Comrs.* v. *Boal, 232* Ill. *248.*

Defendants complain, then, of not being permitted on two occasions to enter evidence relative to the depreciated reproductive value of the improvements located on the premises. In addition thereto, on cross-examination a strenuous effort was made time and again to go into this question, as well as the valuation of the lot on which the improvements were located. It is well established that replacement cost of buildings is one element which a witness may take into consideration for the purpose of arriving at his estimate of value, but it is not admissible for the purpose of showing the value of the buildings separate and apart from the land itself. (*Department of Public Works and Buildings* v. *Pellini, 7* Ill.2d *367.*) The trial court, then, properly excluded the two tenders of depreciated reproductive value and properly denied the defendants the opportunity of probing into the depreciated reproductive figure which petitioner's witness West used as a factor in arriving at his appraisal.

Defendants complain that the trial court twice erred in

denying their motion for withdrawal of a juror when petitioner's counsel referred to the subject premises as a "flophouse." The court had sustained objection to the use of this term earlier in the trial and on the above complained-of occasions had the questions stricken. We conclude that the buildings are, to use American slang, a "flophouse" since both parties concede this fact by using the term in their briefs. Though the word is slang, it is a word of common connotation to the people of Chicago and their newspapers. Hence, the word even with its unpleasant connotation could have been held unobjectionable by the trial court. Many words which are slang at one time later become commonly accepted by long usage. It is not necessary that we wait until common usage by all people makes this a commonly accepted word. Nor was it prejudicial to refer to the premises as a "cubicle type lodging house," since the term is fairly accurate in describing the buildings which contained almost 200 of them, six by eight feet and covered with chicken wire.

The defendants allege other erroneous rulings on the evidence by the trial court. To cover these points would make this opinion unduly long and accomplish little. It is sufficient to note that we have carefully examined the trial court's rulings on these matters and find that they were correct.

Defendants argue that the jury's verdict was against the manifest weight of the evidence because their witnesses were more persuasive, experienced and credible than petitioner's witnesses. It has long been the rule in Illinois that where the evidence is conflicting, the jury has viewed the premises and the amount fixed is within the range of the evidence, the verdict of the jury will not be disturbed unless the record clearly shows it has been influenced by passion or prejudice or unless there was a clear and palpable mistake. (*Department of Public Works and Buildings* v. *Pel-*

*lini,* 7 Ill.2d 367; *Department of Public Works and Buildings* v. *Lambert,* 411 Ill. 183; *Jefferson Park District* v. *Sowinski,* 336 Ill. 390.) The jury apparently was impressed by what it saw and by the petitioner's witnesses, for it returned a verdict close to their estimated valuation. There is nothing to indicate that in so acting the jury was motivated by passion or prejudice or that it was palpably mistaken. The jury's verdict was reasonable and there is abundant testimony in the record to support it.

It is argued, finally, that the trial court erred in instructing the jury. Defendants contend that the jury should have been instructed as to the meaning of the words "burden of proof." The record shows defendants did not tender such an instruction, thus, they cannot now complain; nor can they complain that the court of its own motion did not give further instructions on the matter. Generally speaking, it is not incumbent upon the court to give instructions of its own motion, (*Buttitta* v. *Lawrence,* 346 Ill. 164,) and no special circumstances existed here.

It is argued that error was committed by instructing the jury not to consider any evidence of volume of business when no such evidence had been allowed. Since evidence of the volume of business was not in the record, the trial court should not have instructed upon it. However, since defendants constantly tried to get such evidence into the trial and the jury heard the court's numerous rulings thereon, it could hardly have been misled. We do not consider this error sufficiently prejudicial to warrant a reversal.

Many other objections to instructions were based upon the defendants' views relative to the propriety of the offers of evidence on which we have heretofore passed. We have examined all of the instructions and, in considering them as a whole, are of the opinion that the jury was fairly instructed.

We believe the jury verdict was in accord with the law

and the evidence and that the trial court did not commit reversible error. The judgment of the superior court of Cook County was correct and is affirmed.

*Judgment affirmed.*