The Department of Public Works and Buildings of the State of Illinois for and in Behalf of the People of the State of Illinois, Petitioner-Appellant, v. Arthur Brockmeier and Dorothy Brockmeier, His Wife, Defendants-Appellees.

Gen. No. 69–40.

Fifth District.

September 2, 1970.

William J. Scott, Attorney General of State of Illinois, of Springfield, and Ronald C. Mottaz, Special Assistant Attorney General, of Alton, for appellant.

Maurice Dailey, of Granite City, for appellees.

GOLDENHERSH, J.

Petitioner, The Department of Public Works and Buildings, appeals from the judgment of the Circuit Court of Madison County entered upon a jury verdict in an action to condemn land for use in the construction of a four-lane access road to the Campus of Southern Illinois University.

Defendants, Arthur Brockmeier and Dorothy Brockmeier, are husband and wife, and are the owners of a parcel of land comprising approximately 150 acres. Prior to the taking, the parcel was divided by Bluff Road, approximately 100 acres lying east of the road and the remainder to the west. Defendants' residence and outbuildings were located east of Bluff Road. The parcel taken by petitioner comprises 8.53 acres of defendants' land, in addition to 0.6 of an acre included in Bluff Road.

Prior to the taking, Bluff Road was a through road to which defendants had access in front of their residence; since the construction of the new road Bluff Road dead-ends to the north of defendants' home. In order to reach the land west of Bluff Road, defendants now are required to travel south on Bluff Road to a crossover to a frontage road.

Defendants operate a sod farm, and prior to the taking, all of the land west of Bluff Road, and a part of the land east of the road, were devoted to the production of sod. The testimony shows that defendants commenced the growing of sod in 1956, and approximately 5 years was required to develop roots for sod production. Once established, the roots will last for 100 years. The production of sod requires large amounts of water, and there is a large well on defendants' land which produces water at the rate of 1,000,000 gallons each 12 hours. Laterals extend from this well to all parts of the property.

The sod is cut by special machinery and between ½ inch and ¾ inch of dirt is left on the sod. After the sod is cut, the land is refertilized and reproduces sod which can be cut the following year.

The testimony shows that since the construction of the new road defendant, Arthur Brockmeier, has difficulty moving his machinery to the land west of Bluff Road. Traffic is heavy on the access road and he encounters difficulty and delays. Drainage from the new road has damaged a 5-acre tract on the west side of the defendants' land so it can no longer be used for growing sod. Defendants also sold top soil from a portion of the land lying east of Bluff Road and it is more difficult to move trucks in and out of the area where the soil is removed for sale.

Three witnesses called by petitioner testified that the highest and best use of defendants' land was for agricultural purposes; their opinions of the value of the entire

parcel ranged from $144,800 to $170,000, and as to the value of the land taken, from $6,800 to $7,950. Two of these witnesses testified their opinions were based on sales of comparable lands, from one of which top soil was being removed for sale, but none involved sod growing operations. None of the witnesses thought there was any damage to the remainder, and one expressed the opinion the value of the remainder was enhanced.

Over petitioner's continuing objection, defendants' appraisal witness, Bloodworth, testified he was unable to find any comparable property in the area, and because he found no comparables, he had used the income approach in determining fair cash market value. His opinion as to the highest and best use of the property was as a sod farm, and for the sale of top soil and dirt. His opinion as to the fair cash market value of the entire farm was $892,000, and the value of the 8.53 acres taken was $69,700. He further testified there would be damage to the remainder of the property to the extent of $21,500. He based his damage to the land not taken upon the change in drainage and the difficulty in access. In cross-examination, he testified that in arriving at his valuation based on the income approach, he used the average income that the defendants received from sales of sod for the two years, 1965 and 1966. He further considered the expenses in the operation, the general expenses of the farm, the depreciation of the machinery, and considered the labor of the defendants. He then capitalized the final figure at 10%.

Over petitioner's continuing objection, defendants' appraisal witness, Coultas, testified that in addition to being an appraiser he was the owner of a sod farm, the sod raised on the Brockmeier property was the finest in the country, and the nearest comparable sod farm was located in New Jersey. He testified the highest and best use of the property was as a sod farm. In his opinion, the

value of the entire property was $1,026,000, and the value of the land taken was $78,440. He further testified there was damage to the remainder of the land to the extent of $45,000. He based his damage to the remainder upon the change in access, and damage to the sod field because of drainage. In using the income approach, he used the income over the next ten years in the future. In using the future income approach, he used the gross income of the farm of approximately $1,526,000, allocated one-third to expenses, and the balance was his appraisal. He stated the important thing in the defendants' operation was the availability of large quantities of water.

The jury returned a verdict awarding defendants $30,600 for the property taken, and $8,700 for the damages to the remainder.

As its first ground for reversal, petitioner contends the trial court erred in permitting defendants' witnesses to state opinions of value of the land taken, and damage to the remainder, which were based upon the income from the land and not upon fair cash market value.

We have examined the many authorities cited by petitioner and defendants and are of the opinion the trial court did not err in admitting the testimony. It is true the testimony adduced by petitioner is that the highest and best use of the land was agricultural, but this does not preclude proof that the property had a special value by reason of its capability to produce high quality sod for the next 90 to 95 years. City of Chicago v. Harrison-Halsted Bldg. Co., 11 Ill2d 431, 143 NE2d 40. The evidence shows the land possessed this special capability at the time of the taking, and it does not depend upon any value or effort peculiar to the owner. With respect to the testimony of Bloodworth, he had expressed his opinion of the value of the land without reference to the specific profits derived by defendants from their operations, and the testimony elicited upon cross-examination

went only to the credibility and weight of his testimony. Sanitary Dist. of Chicago v. Loughran, 160 Ill 362, 367, 43 NE 359.

The jury viewed the property, the verdict is within the range of the evidence, and the verdict should not be disturbed unless clearly shown to have resulted from passion, prejudice, or palpable mistake, The City of Chicago v. Giedraitis, 14 Ill2d 45, 150 NE2d 577.

Petitioner contends the court erred in giving, over its objection, defendants' Instruction No. 1, in the exact language of the instruction set forth in Illinois Light & Power Co. v. Bedard, 343 Ill 618, 627, 175 NE 851. The testimony is conflicting as to the highest and best use of the property, and in view of the evidence of its "special value" for sod production, the instruction was properly given.

Petitioner argues that the court erred in giving, over its objection, defendants' Instruction No. 2, which is similar in form to one considered by the Supreme Court in Forest Preserve Dist. of Cook County v. Krol, 12 Ill2d 139, 145 NE2d 599 (Instruction No. 13 at page 149). Petitioner contends the substance of the instruction is covered by its Instructions No. 8 (IPI 300.80) and No. 10 (IPI 300.45). Although the instruction is somewhat argumentative in form, upon considering the instructions as a whole, we are of the opinion that petitioner was not prejudiced by its being given.

Petitioner contends the court erred in refusing its Instruction No. 9 in the form of the first paragraph of IPI 300.49. The court sustained an objection to the statement of petitioner's appraiser, Miller, that the road would "help the property" on the ground that it was speculative, and there is no other evidence of enhancement of the value of the remainder. There is, therefore, no evidentiary basis for giving the instruction and the court did not err in refusing it.

We find no reversible error, and the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.