(No. 47813.—

THE DEPARTMENT OF TRANSPORTATION, Appellant, v. QUINCY COACH HOUSE, INC., *et al.*, Appellees.

*Opinion filed October 1, 1976.*

William J. Scott, Attorney General, of Springfield (Roy E. Frazier, Jr., Assistant Attorney General, of Springfield, and Samuel J. Naylor, Special Assistant Attorney General, of Carthage, of counsel), for appellant.

Keefe, Snowden, Gorman & Brennan, of Quincy, for appellee Quincy Coach House, Inc.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

On April 25, 1973, petitioner, the Department of Transportation of the State of Illinois, brought an eminent domain proceeding in the circuit court of Adams County to acquire 7-foot strips of land on the south and west sides of a parcel of real estate and a diagonal strip across the corner of the parcel where the other two strips met. The petition for condemnation alleged that the purpose of the acquisition was for highway improvement. The property in question, a 90 by 100 foot plot located at the northeast corner of Broadway and 24th Street in Quincy, Illinois, was owned by the defendant, Quincy Coach House, Inc., which operated a restaurant on the premises. Defendant filed a cross-petition alleging damages to the remainder of the property as a result of the taking. Following a jury trial on May 13, 1974, a judgment was entered on the verdict, awarding defendant $7,500 for the land taken and $68,000 as damages to the remainder of the property. On appeal, the appellate court affirmed the judgment (*Department of Transportation v. Quincy Coach House, Inc.*, 29 Ill. App. 3d 616), and we granted petitioner leave to appeal, wherein it raises certain evidentiary questions.

Defendant's restaurant was operated in a one-story building. Prior to the taking, approximately 18 vehicles could park on the property along two sides of the building. It was from this area that the strips were condemned. This loss of property virtually eliminated the availability of parking space on the premises. The expert appraisal witnesses for the opposing parties agreed that the greatest

portion of the damages occurring to the land not taken resulted from the loss of parking.

At a hearing on May 4, 1973, to determine preliminary just compensation, the "quick-take" proceeding, Louis Kienzler, an appraiser, testified as an expert witness for petitioner. He stated that in his opinion the fair cash market value of the realty prior to the taking was $70,000. As to the property taken by the State, he valued that, as part of the whole tract, at $6,600, and the part which remained after the taking at $40,900. On cross-examination, Kienzler explained that in evaluating real estate to determine the fair cash market value there are generally three approaches used, cost of reproduction, market and income. The cost approach consists, basically, of estimating the value of the land and then adding to it the value of the improvements less depreciation. Depreciation, however, includes many factors, such as the presence or absence of parking, which might be necessary for the operation of the business. The market approach is used by finding similar land and improvements which have recently been sold, and then comparing those with the present real estate to determine a fair value. The income approach is reached by determining what income the real estate would produce if it were rented. Specifically, an appraiser would find out what the owner's expenses are, such as real estate taxes, depreciation, repairs and insurance, and what the reasonable expected return would be from such rental property. Using these figures he would compute the net income from the expected rental and then capitalize it at the going investment rate into an indication of present value. The resultant figure is then added to the value of the land to determine the fair value of the real estate. Kienzler stated that he employed both the cost and income approaches in determining the fair cash market value, but not the market approach, since no comparable property could be found. Defendant's counsel then questioned Kienzler about the actual figures he used and his computa-

tions. Following this hearing the trial judge set preliminary just compensation at $36,500.

At trial before a jury three appraisers appeared on behalf of the defendant. Everett Talcott testified that the fair cash market value of the real estate prior to the taking was $117,000. In his opinion the value of the property taken was $7,840, while the damage resulting to the remainder was $75,160. Talcott utilized the cost and income approaches in evaluating the property. Under the cost approach, he valued the land separately from the improvements and then added the figures to reach a final value for the entire property. He illustrated these computations to the jury. He further testified, regarding the income approach, that it is a customary practice for restaurants to be leased with the rental based upon a percentage of the annual sales. Talcott explained his calculations under this approach and also illustrated them on a blackboard for the jury. On cross-examination Talcott said that, in reaching a final value under the cost approach, judgment must be used to determine whether the land and the improvements are "compatible." In this case, he believed they were.

Donald Voth and George Mating testified that they employed the cost and income approaches in the same manner as did Talcott. Voth expressed the opinion that the value of the property prior to the condemnation was $116,000, that the property taken was worth $7,470, and that the damage to the remainder was $86,030. Mating thought the proper values were $100,000, $5,810 and $72,190, respectively. In describing his use of the income approach, Voth detailed his computations to the jury on a blackboard. Both Mating and Voth stated that, in appraising the realty under the cost approach, they determined that the land and the improvements were compatible.

Louis Kienzler again testified for the petitioner at trial. He expressed the opinion that the fair cash market value of the property before the condemnation was

$75,000 and that the value of the property taken was $7,200. In testifying on the question of damages to the remainder, Kienzler stated that one of the factors he considered in making his appraisal was the "cost to cure." Defendant objected to such testimony and, in an offer of proof, Kienzler explained that the "cost to cure" was the money defendant would need to expend to repair the damage to its business by the loss of parking. Across the street from defendant's property was a vacant lot which the defendant could acquire for use as a parking lot. The vacant property was owned by the State of Illinois and available for purchase. Kienzler believed the defendant could buy the property for approximately 125% of its appraised value. He viewed this estimated purchase price as the amount of monetary damage done to the remainder. The trial judge sustained the defendant's objection and struck the testimony regarding the "cost to cure" and Kienzler's opinion as to the value of the remainder, which was based upon this testimony. The judge found that it was immaterial to the issues before the court.

Robert Hayes, a professional appraiser, also testified on behalf of the petitioner. The value of the property prior to the taking was, in his opinion, $76,000. The property taken by the condemnation was worth $7,700, and the value of the remainder was $41,500. In response to defendant's question on cross-examination, Hayes stated that he used a process of both the cost and income approaches in determining his opinion of the fair cash market value. No further testimony was elicited to explain his statement.

Petitioner raises six issues on appeal: first, the appellate court erred in holding that certain evaluation evidence given by Kienzler in the "quick-take" proceedings operated as a waiver of petitioner's right to object to certain valuation evidence proffered by defendant during the trial; second, evidence of the amount of business and the gross receipts to determine projected rentals is inadmis-

sible when the real estate is owner occupied and the owner conducts the business; third, evidence of the separate values of land and of improvements is inadmissible and testimony of a witness, based in part on such values, is improper; fourth, it is improper for a valuation witness to state the underlying figures in the cost approach and to state the separate values or results of the different valuation methods; fifth, the trial court improperly struck the testimony of petitioner's witness, Kienzler, as to the damages to the remainder; and sixth, the appellate court erred in holding the verdict was within the range of evidence.

At trial defendant elected to present its case-in-chief first. This election was permitted because title to the property sought by the petition for condemnation had already vested in the petitioner by use of the "quick take" statute, and the defendant had filed a cross-petition for damages to the remainder. (See *Department of Business and Economic Development v. Brummel,* 52 Ill. 2d 538, 540.) During the introduction of defendant's evidence, petitioner repeatedly objected to the admissibility of any evidence of gross sales or receipts from the restaurant's business, and to the use of the income approach as a basis for determining fair cash market value. Petitioner contended that evidence of the volume of business, *i.e.,* the gross receipts or the estimated projected rental, was inadmissible when the property is not devoted to a "special use" and is owner occupied. In resolving this issue on appeal, the appellate court acknowledged prior case law, which enunciated the rule that when premises are owner occupied future projections of rentals are too conjectural to be a proper element in determining value. The court reasoned, however, that since there were no similar sales to compare with, the use of the income approach was no more speculative than the market approach. The appellate court further held the petitioner was precluded from objecting, because it had introduced

evidence of projected rentals in the "quick take" proceeding. The evidence referred to by the court was Kienzler's opinion of the property's value, which, as it was brought out during cross-examination, was based in part on his projections of rental income.

Petitioner maintains, in its first issue on appeal, that evidentiary matters occurring in the fixing of preliminary just compensation in "quick take" proceedings have no relevance on evidentiary matters at trial before a jury to determine final just compensation. Accordingly, it cannot be precluded from objecting to improper evidence at the later trial.

In regard to the hearing to determine preliminary compensation, the Eminent Domain Act provides in section 2.2(d):

> "Such preliminary finding of just compensation, and any deposit made or security provided pursuant thereto, shall not be evidence in the further proceedings to ascertain finally the just compensation to be paid, and shall not be disclosed in any manner to a jury impaneled in such proceedings; and if appraisers have been appointed as herein authorized, their report shall not be evidence in such further proceedings, but the appraisers may be called as witnesses by the parties to the proceedings." (Ill. Rev. Stat. 1973, ch. 47, par. 2.2(d).)

In *Department of Public Works and Buildings v. Dust,* 19 Ill. 2d 217, 218, this court recognized that the initial hearing "is a proceeding within a proceeding, and its primary purpose is to place possession and title in the State prior to a final determination of just compensation while protecting the interest of the landowners." In light of the language of the pertinent statute and the obvious intent of the legislature to separate the evidence introduced in the "quick take" hearing before the court from that introduced before the jury at trial, we must agree with the petitioner's contention. Since the "quick take" hearing and the trial are separate and apart from one another, the presentation of certain evidence at the former proceeding

cannot act as a waiver of the right to object to similar evidence in the latter. This holding results in no prejudice to either party, since, at the trial to determine final just compensation, both sides present their case *de novo*.

*City of Lincoln v. Chicago and Alton R.R. Co.*, 262 Ill. 98, cited by the appellate court in support of its holding that the petitioner had waived its right to object is inapposite. In that case the defendant first introduced evidence which violated the ultimate issue rule and then later objected to the plaintiff's offer of such evidence. *City of Lincoln* involved evidentiary questions occurring in the same proceeding, while the present case involves two separate and distinct proceedings.

The fact that Hayes, a witness for the petitioner, stated on cross-examination that he had considered the income approach, and thereby used the same evidence as did defendant's witnesses, does not preclude petitioner's right to object. After the trial court had overruled the petitioner's objections to the defendant's use of this evidence, petitioner could introduce evidence of the same class to meet that of the defendant without waiving its right to claim the benefit of its objections on appeal. *Chicago City Ry. Co. v. Uhter*, 212 Ill. 174, 180-82; *Kane v. City of Chicago*, 392 Ill. 172, 180.

It has consistently been held that in eminent domain proceedings involving premises which are owner occupied evidence of projected or future rental income is too speculative and dependent upon too many contingencies to be safely accepted as evidence of the fair cash market value. (*City of Chicago v. Giedraitis*, 14 Ill. 2d 45, 51; *Chicago Land Clearance Com. v. Darrow*, 12 Ill. 2d 365, 372-73; *City of Chicago v. Central National Bank*, 5 Ill. 2d 164, 176.) As it was stated in *Jacksonville and Southeastern Ry. Co. v. Walsh*, 106 Ill. 253, 256, "one person can do a greatly larger business in the same calling, at the same place, and under the same circumstances, than another."

Notwithstanding these prior cases, the appellate court found that the income approach could properly be used, because it was no more conjectural than the market approach, for which there were no similar sales to consider. The three appraisal witnesses who appeared for the defendant stated, however, that in determining the value of the property by the cost of reproduction, they had utilized the market approach to ascertain the value of the land separate from the improvements. Two of the three appraisers spoke in detail on sales in the general area, which they had considered in forming their opinion. While all the appraisers who testified at trial said that there were no truly comparable sales of restaurant properties, there could well be sales of other commercial properties which could be quite persuasive for an experienced and competent appraiser in determining the fair cash value of defendant's property without involving the highly speculative factors of skill, good will and other analogous characteristics of the particular operator of a business. Since the property was owner occupied, the trial court erred in admitting evidence of projected rentals under the income approach.

Defendant argues that the above-stated rule is without basis in sound reasoning, since, presumably, the evidence of gross sales and projected rentals would have been admissible had the defendant rented the property to another corporation owned by the same two individuals who own the defendant corporation. In such circumstances, it contends, there would have been a leasing arrangement upon which the income approach could have been predicated. This argument, however, ignores the basis for the rule. In the hypothetical situation advanced by the defendant, the business remains, in effect, owner occupied, and the same skill, knowledge and good will are present. Conversely, there is absent in this situation a leasing agreement, resulting from arm's-length negotiations between a willing landlord and a willing tenant, which makes

the income approach a reliable method for determining value.

In utilizing the cost of reproduction approach, it is necessary to determine the value of the land separate from the value of the improvements, since land cannot be reconstructed and its value is not a cost of reproduction. As its third error, petitioner argues that it is improper for an appraiser to testify to the separate values of the land and of the improvements, because a valuation opinion reached under this approach is not necessarily the total of the two. At trial defendant's witness Talcott expressed an opinion of value which was the exact sum of his computations of land value and the cost of reproducing the improvements.

In *Department of Public Works and Buildings v. Lotta,* 27 Ill. 2d 455, 456-57, the court stated:

> "We have consistently held that the fair market value of improved property is not the sum of the value of the building and the value of the land computed separately. For this purpose, the whole does not necessarily equal the sum of the parts. The value of unimproved land, adaptable for any use, may diminish, as land, when improved by the construction of a building and so committed to a particular use. For similar reasons, the construction of a building may not produce an increment in value equal to its cost, since the improvement may not be desirably situated. To avoid misleading and confusing the jury, the evidence may properly be confined to the value directly at issue, that is, the value of the improved land as a whole."

In upholding the admissibility of Talcott's testimony, the appellate court relied upon the fact that during cross-examination Talcott stated that he believed the improvements were "compatible" with the land. In support of its reasoning the appellate court points to the

following sentence in *Lotta*: "Where such evidence has been received over objection, we have reversed, whether an expert opinion has been based on the value of the buildings separate from the land [citation], or evidence of the value of the building was received 'without any showing being made that the market value of the property as a whole was enhanced to the extent of such figure or in any other amount.' [Citation.]" (27 Ill. 2d 455, 458.) Under this authority the appellate court concluded that such testimony need not be stricken when the witness believes the improvements are "compatible." The court held that "compatibility" refutes the existence of any gross disparity between the cost of the improvements and the enhancement in the value occasioned thereby.

We must, however, disagree with the appellate court's reasoning. While the term "compatible" may refute the existence of a gross disparity between the values, it does not show that the market value of the property was enhanced to the extent of the cost of the improvements. For instance, the construction of a gas station on a corner lot of an intersection might be quite compatible with the land, but yet it might not increase the market value of the property to the extent of its cost. Other factors must be considered, such as the amount of traffic using the intersection and the location of competing gas stations, which may have a controlling effect upon market value. Talcott's statement that the land and the improvements are compatible is too indefinite to provide the necessary showing that the market value was enhanced to the extent of the cost of reproducing the improvements.

Petitioner maintains, as its fourth error, that it is inadmissible for a witness to state the underlying figures, which were considered in arriving at a valuation opinion. At trial defense witnesses Talcott and Voth illustrated to the jury on a blackboard the various computations they used in reaching their opinions. In *Lotta*, this court held that, to avoid confusing and misleading the jury, evidence

presented at trial may properly be confined to the value directly at issue, that is, the value of the improved land as a whole, and that evidence of the separate values of the land and the improvements was inadmissible. (27 Ill. 2d 455, 456, 458; see also *Chicago Land Clearance Com. v. Darrow*, 12 Ill. 2d 365, 373; *Department of Public Works and Buildings v. Pellini*, 7 Ill. 2d 367, 373.) The problem which may occur from the admissibility of such evidence is that the jury may conclude that the market value of the property is the sum of the different values stated by the witnesses. It may fail to consider the various other factors, such as the real estate market in the area of the property, which a professional appraiser, with his experience and judgment, must weigh in determining the market value. The trial court, therefore, erred in admitting evidence of the underlying figures used by the appraisal witnesses.

As a fifth error the petitioner contends that the trial court improperly struck the testimony of its witness, Kienzler, regarding the "cost to cure." Petitioner argues that it is the obligation of a condemnee to minimize the damages resulting from the loss of property by taking such action as an ordinarily prudent person might take under like circumstances. Under this principle, it is proper for a valuation witness to testify that the property could still be used as a restaurant by the purchase of off-street parking across the street. It would then follow that the cost of acquiring this property would be equivalent to the monetary damage done to the remainder by the taking. Petitioner admits that it has found no Illinois cases which support its contention.

While the petitioner may be correct in maintaining that a condemnee has a duty to minimize damages, the evidence it offered at trial to show how the defendant might do this was entirely too speculative. The property which Kienzler said was available for purchase was owned by the State, and Kienzler admitted, during the offer of proof, that if the State decided to sell the property it

would have to be done by public auction. He also testified as to the desirability of property in this area, which would decrease the defendant's likelihood of acquiring the property. Under these circumstances, Kienzler's testimony concerning the "cost to cure" was too conjectural and contingent to be relevant to the issue under consideration. The trial court did not err in striking this testimony.

The resolution of these questions makes unnecessary a determination of the final question, whether the verdict was within the range of evidence. Accordingly, for the above-stated reasons, the judgment of the appellate court is reversed and the cause is remanded to the circuit court of Adams County for a new trial on the issue of final just compensation in accordance with the views expressed herein.

*Reversed and remanded.*