THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF ILLI-
NOIS, Petitioner-Appellant, v. JOHN G. KELLER *et al.*, Respondents-Ap-
pellees (East Side Levee & Sanitary District, n/k/a Metro East Sanitary *et
al.*, Respondents).

Fifth District No. 5—86—0111

Opinion filed November 6, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart,
Solicitor General, of Chicago, Roy E. Frazier, Jr., Assistant Attorney Gen-
eral, of Springfield, and Paul D. Giamanco, Special Assistant Attorney Gen-
eral, of Mt. Vernon, of counsel), for appellant.

Harry J. Sterling, of Sterling & Stanley, P.C., of Fairview Heights, for appellees.

JUSTICE KARNS delivered the opinion of the court:

The Department of Transportation of the State of Illinois (the Department) appeals from a judgment of the circuit court of Madison County awarding the Kellers $259,795.92 in a condemnation suit as additional just compensation. We affirm.

The Department filed a petition for condemnation seeking fee simple title in a certain parcel of land owned by John G. Keller, Louis F. Keller and William J. Keller (the Kellers) for the purpose of constructing a highway. The property taken consisted of 24.363 acres, 16 of which were prime horseradish-growing land. In addition, the Department landlocked another 13.465 acres of the Kellers' land also used for producing horseradish.

The Department's witnesses testified that based on comparable sales in the area the value of the land taken ranged from $62,250 to $68,216, and damage to the remainder ranged from $30,450 to $46,825. Witnesses for the Kellers testified the value of the land taken ranged from $315,955 to $490,100, plus damages to the remainder ranging from $250,000 to $507,726. Two of the Kellers' witnesses used the income approach of valuation to reach their opinions of fair cash market value because they found no comparable sales of farms with the capability of producing horseradish in the area.

The jury returned a verdict of $195,000 for the property taken plus $152,000 as damage to the remainder for a total of $347,000. The circuit court entered judgment upon the verdict for the total sum of $259,795.92 as additional compensation over the preliminary just compensation awarded in an earlier "quick take" proceeding.

■■ On appeal, the Department argues the trial court erred in allowing two of the Kellers' witnesses to use the income method of valuation when the property taken did not constitute "special use" property. We agree farmland used for producing horseradish does not constitute "special use" property as that term has come to be understood by our courts. (See, *e.g., Chicago Land Clearance Com. v. Darrow* (1957), 12 Ill. 2d 365, 372, 146 N.E.2d 1, 5; *City of De Kalb v. Nehring Electrical Works, Inc.* (1976), 40 Ill. App. 3d 726, 729, 353 N.E.2d 150, 153.) We disagree, however, with the Department's interpretation of the trial proceedings and the Kellers' position at trial. The Kellers were not advancing a theory of "special use" as the Department contends but rather that the property had a special value by virtue of its capabilities to produce a "specialty crop," namely, horse-

radish. Because no comparable sales of land capable of producing horseradish were found, the Kellers resorted to one of the other two accepted methods of valuation, the income approach. See *Department of Transportation v. Bouy* (1979), 69 Ill. App. 3d 29, 35, 386 N.E.2d 1163, 1167. See also *Department of Transportation v. Quincy Coach House, Inc.* (1976), 64 Ill. 2d 350, 354, 356 N.E.2d 13, 15.

■ In a condemnation proceeding, the measure of compensation for land taken is the fair cash market value of the property for its highest and best use, including any special capabilities the property might have. (*Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410, 415, 247 N.E.2d 888, 892; *City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 440, 143 N.E.2d 40, 46. Here, the highest and best use of the land taken was agricultural. Its special capability was to produce horseradish; a crop which can only be grown effectively in certain types of soil, 24 to 30 inches deep. There are only 35 to 40 horseradish farms in Madison and St. Clair counties and only 70 in the entire United States. The Madison-St. Clair area produces two-thirds of the nation's supply of horseradish. In addition, horseradish is one of the highest income-producing crops. Even though it is a labor-intensive industry, horseradish produces a *net* income nine times greater than grain crops. Eight and one-half percent of the Kellers' total acreage produced 46.8% of their farm's income. The Department reduced that prime acreage by one-third.

■ As stated before, the issue here is not whether a horseradish farm constitutes a special use but rather how the fair cash market value of land capable of producing a specialty crop can be determined. Fair market value is the price for which the property would sell under ordinary circumstances assuming both a willing seller and buyer, under no compulsion to sell or buy. (*Department of Public Works v. Oberlaender* (1969), 42 Ill. 2d 410, 415, 247 N.E.2d 888, 892.) The Department argues the only acceptable method is by looking to comparable sales, that is, sales of land which are similar in character, time and locality. (See *People ex rel. Director of Finance v. YWCA* (1979), 74 Ill. 2d 561, 570, 387 N.E.2d 305, 310.) The evidence at trial revealed, however, that horseradish farms in this area remain in a family for generations; the Keller family has owned its farm for 90 years. Those sales of farmland which the Department's experts used either contained no horseradish at all or the amount and quality of horseradish-producing land in relation to the rest of the tract was unknown. Even the Department's witnesses admitted a buyer would pay more for property where a higher net income could be realized. More impor-

tantly, the Department's experts based comparable sales on soil maps which only verified the type of soil to a 6-inch depth even though soil capable of producing horseradish must be at least 24 inches deep. As the trial court stated in its order denying the Department's post-trial motion, "the State did not present credible comparable sales to thereby preclude the income approach." The Department simply did not present any evidence which the jury could use to value the special capabilities of the property taken. Without the Kellers' evidence, the jury would have had to resort to pure speculation to determine just compensation.

We find *Department of Public Works & Buildings v. Brockmeier* (1970), 128 Ill. App. 3d 395, 262 N.E.2d 345, to be controlling in this instance. *Brockmeier* also involved condemned land with a special value for production of a "specialty crop." This court found no error in using the income approach to value the land. (128 Ill. App. 2d 395, 399, 262 N.E.2d 345, 348. *Cf. Department of Transportation v. Quincy Coach House, Inc.* (1976), 64 Ill. 2d 350, 356 N.E.2d 13 (comparable sales did exist).) The special value of the land here also depends upon the capabilities of the soil to grow a certain crop, not the skill and labor of the owners. (*Cf. Chicago Land Clearance Com. v. Darrow* (1957), 12 Ill. 2d 365, 372, 146 N.E.2d 1, 5.) Anyone can grow horseradish once taught how.

■ The Department presented evidence of sales which it believed were comparable for purposes of valuing the property taken. The Kellers presented evidence of the special value of their land in reaching their determination of fair cash market value. The jury was to decide which, if any, sales were comparable and the extent of the special value of the land taken. The jury viewed the property and heard the evidence. The verdict reached is clearly within the range of that evidence. We see no reason to disturb the result. See *Department of Public Works & Buildings v. Brockmeier* (1970), 128 Ill. App. 2d 395, 400, 262 N.E.2d 345, 348.

For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.

Affirmed.

JONES and HARRISON, JJ., concur.