HICKORY CREEK NURSERY, INC., Plaintiff-Appellee, v. JAMES G. JOHNSTON, Defendant-Appellant.

Third District   Nos. 3—87—0329, 3—87—0377 cons.

Opinion filed March 17, 1988.—Rehearing denied April 22, 1988.

Daniel G. Litchfield, of Burditt, Bowles & Radzius, Ltd., of Chicago (Alan I. Becker, of counsel), for appellant.

James R. Fabrizio, of Garrison, Fabrizio & Hanson, Ltd., of Joliet, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Defendant, James G. Johnston, appeals the order entered by the circuit court of Will County determining his Hickory Creek, Inc., stock to be of no value, and the value of his interest in a land trust holding title to real estate upon which the corporation's principal place of business was located to be $33,759. Johnston also appeals the denial of a motion to reconvey his corporation stock which was surrendered to Hickory Creek Nursery, Inc., in 1982 pursuant to court order in partial satisfaction of a judgment entered against him in favor of the corporation.

In 1982, Johnston owned one-third of the outstanding stock in Hickory Creek Nursery, Inc., a closely held corporation. Johnston was also an employee of the corporation until 1980. In 1980, the corporation brought an action in the circuit court of Will County alleging that over a period of years Johnston had taken sales revenues for personal use before they were recorded on the corporation's books to the detriment of Hickory Creek and its shareholders. In March 1982, the trial court entered judgment against Johnston in the amount of $365,490. Following issuance of a citation to discover assets, the trial court ordered Johnston to transfer his corporate stock and his interest in the land trust to the corporation in partial satisfaction of the judgment. The court reserved for a later hearing the determination of the value of these transfers to be credited against the judgment.

A hearing was held in February 1987 to determine the value of the stock and the value of the land trust interest as of April 14, 1982. To present evidence as to the value of the corporation in 1982, Johnston called as an expert witness Gregory C. Vlasak. Vlasak stated that he held a bachelor's degree in economics and a master's degree in business administration from the University of Chicago, and that he had valued approximately 200 businesses over the past 10 years, nearly one-third of them being directly comparable to Hickory Creek in terms of assets or sales.

To determine a value for the corporation, Vlasak testified that he examined the corporation's financial statements and tax returns and compared them with two publicly owned nursery businesses. He then applied the valuation methodologies of normalized earning power, discounted cash flow, and balance sheet analysis to the corporation's financial figures. Vlasak concluded that the normalized earning power of the corporation was $75,000 per year after making adjustments for the sales Johnston did not report for the years 1977 through 1981, and for the extraordinary expenses of the instant litigation and the corporation's purchase of a house. He then applied a multiplier of six to the

normalized earning power figure and stated that the value of the corporation was $450,000. Vlasak stated he selected a multiplier of six based on a discounting of the multipliers of the two larger publicly held businesses because Hickory Creek was a closely held business.

In performing a discounted cash flow analysis of the corporation, Vlasak reported that Hickory Creek's sales had grown 15% annually during the period 1978 to 1981, and he projected that its sales would increase 10% annually the following 5 years and in 1987 there would be a 5% sales growth. The discounted cash flow analysis, *i.e.*, the estimated amount of cash which would be available to the shareholders of the corporation, resulted in a corporation value of $430,000. Vlasak testified that his balance sheet analysis confirmed the values arrived at from the normalized earning power and discounted cash flow analyses and concluded that Johnston's one-third interest in the corporation should be valued at $150,000. He further testified that no "minority interest" discount should be applied to this value as his shares were surrendered to the corporation to the benefit of the remaining shareholders, but if a discount were applied because of a transfer to a third party, he stated it would range from 10% to 35%.

Hickory Creek presented Arthur L. Crandell, CPA, as its expert witness on corporation value. Crandell stated that in his opinion a normalized earnings power analysis was not appropriate for any business with sales or assets less than $12 million and that a formula or "cookbook" analysis was more appropriate to determine value for a corporation the size of Hickory Creek. To value a corporation using this valuation methodology, Crandell stated one first calculates the value of a corporation's tangible assets, *i.e.*, its physical and financial assets, minus liabilities, and then assigns an intangible value to the corporation only if its earnings are above average for the industry classification of the corporation, or if the corporation has multiple lines of business, its earnings in these lines are above average. A capitalization rate is then assigned to both values to arrive at an overall corporation value.

In applying this methodology to Hickory Creek, Crandell reported that even though the corporation's 1981 earnings were $105,998, the value of Hickory Creek was zero, due in part to only a small percentage of its earnings exceeding average industry earnings and the value of its tangible assets failing to exceed its liabilities. Crandell testified, therefore, that Johnston's one-third interest in Hickory Creek Nursery, Inc., was valueless.

In contrast to Vlasak's balance sheet analysis, Crandell did not include as a financial asset Johnston's judgment debt to the corporation, nor did he include the value of the unreported sales revenues when he

calculated profitability. Further, in valuing the corporation's tangible assets, Crandell stated he valued the house owned by the corporation at $144,673, versus a balance of $225,000, which was used by Vlasak in his balance sheet analysis and which was the price the corporation was asking for the house.

To testify as to the value of his interest in the land trust, Johnston presented an MAI appraiser, William McCann, as an expert witness. Both parties stipulated that McCann was an expert in the field of real estate appraisal. In determining a land trust value, McCann stated he employed both a market analysis and a capitalized rate of return analysis using the actual land trust rental income. He testified that both valuation methods resulted in a land trust value estimated to be $550,000.

The corporation presented its own expert witness, Warren Albert, to testify as to the value of the land trust. Albert stated he was not an MAI appraiser, but had been involved in real estate appraising for nearly 30 years and had appraised properties in Will County. Albert testified that the highest and best use of the property in the land trust was commercial development and therefore the property should be valued as vacant land. As vacant land, Albert testified that the fair market value of the property was $315,000 in April 1982. Albert further stated he had appraised the property in 1980 in connection with the instant litigation and at that time had assigned the same value. He testified that between 1980 and 1982 the property had not appreciated because there had been little or no commercial development in the area during that period. Both parties stipulated that in April 1982 the property in the land trust was subject to a mortgage of $160,300.

On March 30, 1987, the trial court issued a minute order finding the total value of Johnston's property subject to the citation proceeding, his stock in Hickory Creek Nursery, Inc., and his interest in the land trust was $33,759. The trial court thereafter entered a written order finding the amount of the judgment on April 14, 1982, was $331,241, plus costs. Following denial of his motion for rehearing and the filing of notice of appeal, Johnston filed a motion to reconvey the stock which was subsequently denied and from which he also appeals. Both appeals are consolidated for review herein.

Johnston maintains the trial court's determination that his one-third interest in Hickory Creek Nursery, Inc., was valueless was based on legally erroneous premises and was against the manifest weight of the evidence, and that its determination his land trust interest was worth $33,759 was also against the manifest weight of the evidence. Johnston further maintains that his motion to reconvey was improp-

erly denied by the trial court.

■ The first issue presented for review is whether the trial court's apparent acceptance of the valuation methodology advocated by Hickory Creek's expert produced a fair market valuation of Johnston's one-third interest in the corporation. It is well recognized that determination of the fair market value of a closely held corporation is not an exact science, as witnessed by the frequency with which appraisers differ in their opinions concerning the appropriate value to assign to a shareholder's interest in these corporations. *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 446 N.E.2d 1198; *In re Marriage of Mitchell* (1981), 103 Ill. App. 3d 242, 430 N.E.2d 716; *Stewart v. D. J. Stewart & Co.* (1976), 37 Ill. App. 3d 848, 346 N.E.2d 475.

In determining the fair market value of closely held corporate stock for estate and gift tax purposes, the Internal Revenue Service has established guidelines for valuation which are set forth in Revenue Ruling 59—60. (Rev. Rul. 59—60, 1959—1 C.B. 237; see also Rev. Rul. 80—219, 1980—2 C.B. 18.) Among the factors outlined in this ruling to be considered when valuing the stock of a closely held corporation is the earning capacity of the company. Earning capacity is to be determined primarily from an analysis of the corporation's profit and loss statements. In assigning relative weights to the various factors to be considered in arriving at a value, *e.g.*, book value, dividend-paying capacity, intangible value, etc., the appraiser is advised to "accord primary consideration to earnings when valuing stocks of companies which sell products or services to the public." (Rev. Rul. 59—60, §5(a), 1959—1 C.B. 237.) Of the four valuation methodologies applied to value Johnston's interest in Hickory Creek by the experts, the normalized earning power analysis employed by Johnston's expert more closely approximates the suggested valuation guidelines proposed by the Internal Revenue Service.

The record reveals that without adjusting for Johnston's unreported sales, Hickory Creek reported significant net earnings four out of five years during the period 1977 through 1981. Hickory Creek's expert calculated the net earnings for 1981 to be $105,998, and Johnston's expert calculated the corporation's annual normalized earning power, based on adjusted net earnings during the period 1978 through 1982, which included unreported sales revenues, to be $75,000. When the unreported and reported earnings of Hickory Creek are combined, the second step of the formula method advocated by Hickory Creek's expert, which specifically analyzes earnings, results in corporation value of $458,000. This method, after subtracting the corporation's negative tangible value, *i.e.*, liabilities exceeding assets, results in an

overall corporate value of $423,000. Further, the capitalization rate of 20% incorporated in the formula method advocated by Hickory Creek's expert is equivalent to a price/earnings ratio multiplier of five, compared to the multiplier of six selected by Johnston's expert which resulted in his overall corporation value estimate of $450,000.

● ■ ■ Given that the amount of the unreported revenues for the period 1978 through 1980 were judicially determined and were unlikely to recur after Johnston's departure from the company, we find no error in adjusting reported revenues by these sums to ascertain the true earning capacity of Hickory Creek. Following this adjustment, the valuation methodologies employed by both experts produce a corporate value ranging from $423,000 to $450,000. A business which has a history of earnings cannot be considered as a matter of law to be without value. (*Zokoych v. Spalding* (1984), 123 Ill. App. 3d 921, 463 N.E.2d 943.) Further, given the formula methodology advocated by Hickory Creek's expert incorporates indirectly a price/earnings ratio multiplier similar to the discounted multiplier selected by Johnston's expert, we find the issue of the appropriateness of comparing Hickory Creek with two publicly held nursery businesses versus comparisons of similarly sized companies drawn from the Federal government's Standard Industrial Classifications (SIC) to be moot, as the essential issue therein is whether an appropriate multiplier was selected by Johnston's expert in his normalized earning power analysis.

■ Lastly, though Johnston's expert stated that a discounting of Johnston's interest would be in the range of 10% to 35% if it were marketed to an outsider as a minority interest and Hickory Creek's expert applied a minority discount of 25% in his unadjusted formula analysis, we find such discounting does not apply in the instant case when a minority interest is being assumed by the remaining shareholders resulting in a substantial *pro rata* increase in their share and control of the corporation.

■ We thus conclude that the trial court's determination that Johnston's one-third interest in Hickory Creek Nursery, Inc., has no value is contrary to the manifest weight of the evidence and therefore reverse the trial court's determination that his interest does not reduce the judgment entered in this cause. We remand for a determination of the value of Johnston's interest in Hickory Creek Nursery, Inc., which is based on its earning capacity and which takes into consideration the determined unreported revenues for the years 1978 through 1980.

■ The final issue for review is whether the value assigned to Johnston's land trust interest is against the manifest weight of the evi-

dence. Johnston maintains the trial court erred in accepting Hickory Creek's appraisal because it failed to include leases to subtenants, Hickory Creek's business and the value of the buildings on the property. His appraiser applied both a market valuation analysis, which included the buildings' value, in addition to comparable sales, and an income valuation analysis, which capitalized the rate of return the trust received from rentals. The record does not reveal that Hickory Creek disputes the calculations of Johnston's expert concerning rental income or his capitalization rate assumptions in determining value using an income analysis. Rather, Hickory Creek contends that the proper valuation methodology is highest and best use and that this is commercial development absent consideration of improvements and income produced therefrom.

We find no error in the trial court's rejection of the market valuation methodology proposed by Johnston's expert, as the record reveals insufficient comparable sales were introduced into evidence, *i.e.*, only one sale of a comparable property during the period in question. We do assign as error the trial court's reliance on the highest and best use assertion of Hickory Creek's expert, which failed to consider the present productive use of the property, and the income generated therefrom, when the present use results in a value significantly greater than that arrived at from a "highest and best use" analysis. *(Department of Transportation v. Keller* (1986), 149 Ill. App. 3d 829, 500 N.E.2d 982; *Glassey v. County of Tazewell* (1973), 11 Ill. App. 3d 1087, 297 N.E.2d 235.) We conclude that the proper valuation methodology to be applied to value Johnston's land trust interest is an income analysis.

Johnston further maintains that Hickory Creek should have reconveyed certain stock to him. Having determined that the stock is of some value it is not necessary that we determine this question.

Based on the foregoing we reverse the trial court's determination that Johnston's interest in Hickory Creek Nursery, Inc., was without value and that the value of his interest in the land trust was accurately valued at $33,759. We remand, therefore, for a redetermination of both values and the application thereof against the judgment entered against Johnston in March 1982.

Reversed and remanded.

HEIPLE and WOMBACHER, JJ., concur.